## J. A. HAMILTON

### *v.*

### ELIZABETH WELLS, Admx.

*Opinion filed October 16, 1899.*

1. PARTNERSHIP—*it is the duty of the surviving partner to settle firm affairs.* It is the duty of a surviving partner, under the law, to make a settlement of the firm affairs, and only in this way can the interests of the deceased partner be ascertained.

2. SAME—*when partner purchasing deceased partner's interest cannot enforce subsequently discovered liability.* A surviving partner who, upon purchase of the interest of the deceased partner, assumes the debts shown by the books and papers of the firm, cannot enforce against the deceased partner's estate a subsequently discovered liability of the firm not shown by the journal and daily balance book, but which appears from a register and other papers of the partnership, which were in his hands for about ten months before the purchase.

3. SAME—*partner's indebtedness to firm presumed to have been considered in fixing selling price of his interest.* A partner who sells his interest in the firm property cannot be presumed, in the absence of any agreement, to have sold his own indebtedness to the firm, but it will be presumed that such debt was taken into consideration in fixing the selling price.

4. SAME—*when purchasing partner cannot enforce claim against selling partner's estate.* A member of a partnership who purchases the interest of a deceased member cannot recover against his estate on the theory that the books were not correctly kept by him, when he thereby attempts to assert a claim which, if valid, would exist in favor of former partners, and where he was familiar with the business and had possession of its books before purchasing the interest.

*Hamilton* v. *Wells,* 81 Ill. App. 274, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. WILLIAM HARTZELL, Judge, presiding.

GEORGE W. WALL, and TURNER & HOLDER, for appellant.

DILL & WILDERMAN, M. W. WEIR & M. McMURDO, and SNYDER & McMURDO, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

On September 1, 1879, a partnership was formed for the purpose of doing a banking business at Marissa, in St. Clair county, Illinois. The firm was composed of J. C. Hamilton and William Kunze, who each contributed $1500, and J. H. Hamilton, A. J. Meek and A. H. Wells, who each contributed $1000, and the firm was organized and did business under the name and style of Hamilton, Kunze & Co., but the bank was styled the Bank of Marissa. On March 22, 1884, J. H. Hamilton sold his interest in the firm to A. H. Wells. On April 1, 1886, William Kunze sold his interest in the firm to said Wells, and on January 2, 1891, A. J. Meek also sold his interest in the firm to A. H. Wells. On December 1, 1894, J. C. Hamilton sold his interest in the firm to J. A. Hamilton, when the firm name became Hamilton & Wells. Up to the time of the organization of this latter firm A. H. Wells was cashier of the bank and kept the books of the several firms that existed under the changes of the co-partnership, by reason of the different sales of the co-partnership interests to him. From the organization of the first firm until the death of Wells there had been five distinct firms, and the books of each were turned over to its successor, and this continued through all the firms. On June 25, 1895, Wells died intestate, and appellee was appointed administratrix of his estate, and on September 26, 1895, as such

182—10

administratrix, she sold to appellant the interest of the estate in the firm, and made the following assignment of such interest, which was accepted by appellant:

"*Know all Men by these Presents:* That I, Elizabeth J. Wells, administratrix of the estate of Albert H. Wells, deceased, for value received, do hereby sell, assign and transfer to J. A. Hamilton, of Marissa, Illinois, all the interest in the firm of Hamilton & Wells, bankers, of Marissa, Illinois, that Albert H. Wells, now deceased, had in said firm at the time of his death, the said sale to include the debts due the said firm as shown by the books and papers of said firm, except the interest of the said firm in certain notes enumerated and described in a schedule thereof hereunto annexed, marked 'Schedule A;' also except certain other notes enumerated and described in a schedule thereof hereunto annexed, marked 'Schedule B;' and also except the sum of $411.02, which, it is claimed by J. A. Hamilton, may belong to J. H. Hamilton and William Kunze, but which amount, it is insisted by the undersigned administratrix of said estate, belongs to the said estate; which said sum is to be held in trust by J. A. Hamilton, to be delivered to the undersigned, as administratrix aforesaid, on or before the sixth day of July, 1897, with interest on said sum at the rate of three per cent per annum, provided the said J. H. Hamilton and William Kunze do not establish their claim to said sum according to law.

"It is a part of the consideration for this sale and assignment that the said J. A. Hamilton assumes the payment of all obligations, debts and liabilities of the said firm of Hamilton & Wells that the books and papers of said firm may show, or that may be known to exist from any other source of information, at the date of the delivery of this assignment to the said J. A. Hamilton; and that the estate of Albert H. Wells, deceased, shall be and is hereby discharged from all liability to pay the obligations, debts, and liabilities of the said firm of Hamilton & Wells, bankers, that the books and papers of said firm may show or that may be known at the delivery of this assignment, to the said J. A. Hamilton. As to other liabilities, if any, the said J. A. Hamilton is only to pay his proper share.

"Witness my hand and seal this twenty-sixth day of September, A. D. 1895.          ELIZABETH J. WELLS,     [Seal.]
*As Administratrix, etc.*"

At the time of the death of A. H. Wells the cash on hand in the bank exceeded the amount shown by the daily

balance books by more than $2700. Among the books used by these various firms was one called the "Certificate Register," in which entries were made of moneys for which certificates of deposit had been issued. This register, from November 2, 1883, to March 23, 1893, inclusive, was kept by Wells, and of the certificates issued at and between these dates appellant produced eighteen, aggregating $4573.60. The appellant filed a claim against the estate of Wells for the sum of $4819.24, as the amount due him after allowing all just credits, deductions and set-offs, on the eighth day of June, 1896, and claimed the same was for money had and received and used by the deceased belonging to the plaintiff. On trial before the county court of St. Clair county the claim was disallowed, and the claimant appealed to the circuit court, where the claim was again disallowed, from which judgment an appeal was prosecuted by the claimant to the Appellate Court for the Fourth District, where the judgment of the circuit court was affirmed, and the claimant prosecutes this appeal.

The claimant insists that the above amount would be required after applying the assets of the bank to meet its liabilities, and he is asking that this amount be paid by the estate of Wells, as he claims the misfeasance of the latter caused the deficit, and insists that he, the claimant, constitutes the firm and bank and requires the sum stated to meet the liability of the bank to its depositors, and that this shortage is shown by the books and certificates of deposit outstanding and those which have been paid. The contention of the claimant is that this deficit results by reason of the fact that when money was received for which certificates were issued it was not charged on the daily balance or cash book, but that such money was misappropriated by Wells.

The books and papers of the several firms were in evidence, and whilst the imperfect manner in which the books were kept may have rendered it doubtful whether

the money belonging to the firm prior to the firm of Hamilton & Wells was correctly shown by the books or accounted for by the money on hand, we fail to find from the books and papers of the firm of Hamilton & Wells any evidence tending to show that Wells did not account to that firm for every dollar received while he was a member of it. There is no evidence in this record showing the terms on which the first members of that firm sold out their respective interests to those who purchased, save in the case of the sale made by Wells to the appellant. Only by a settlement of the firm affairs of Hamilton & Wells could the interests of the latter have been ascertained, and the appellant, as surviving partner, was, under the law, required to make such settlement of the firm affairs. Under the evidence he did not attempt to do this, nor file an inventory, as required by law. He had had charge of the business of the bank and was in possession of the books, where he was in the almost exclusive control for a period of nearly ten months, when, on an application to him as to whether he would sell his interest, he declined to do so but proposed to purchase the interest of the estate of Wells, and, after frequent meetings with the attorney for the appellee and much negotiating, finally made the purchase under the assignment heretofore set out. The purchase was made on his own judgment of what he was buying and for much less than three-fourths of the amount of the capital stock, it appearing that he paid for appellee's interest by issuing a certificate of deposit for $2722 to her.

The claimant asked the court to hold that if the deceased, Albert H. Wells, while in charge of the bank and while keeping its books and cash, issued its certificates of deposit for cash deposited, which he entered upon the certificate register but not upon the journal or cash book or the general balance book, and did not place the cash for which such certificates were issued in the funds of the bank, and if such certificates were afterwards paid

out of the bank's funds, either by him or plaintiff acting as cashier, or if any of them are still outstanding and valid obligations of the bank, then Wells became liable to the bank for the amount of such certificates; and if the plaintiff owned an undivided one-fourth interest in the bank and purchased from the administratrix an un-' divided three-fourths on the basis of resources and liabilities as shown by the journal or cash book or general balance book, being then unaware of the acts of said deceased or of the liabilities of the bank so created in excess of what is shown by the journal or cash book or general balance book, and if such facts could not have been discovered by the exercise of ordinary care and prudence, then the plaintiff, as owner, has a claim against the estate for the amount of such certificates. Claimant submitted a further proposition, that if the deceased, while keeping the books and cash, issued certificates for cash deposited, which he entered upon the certificate register but not upon the journal or cash book or general balance book, and did not place the cash for which such certificates were issued in the funds of the bank, and if such certificates were afterwards paid out of the bank's funds, or if any of them are still outstanding, then the deceased became liable to the bank to the amount of such certificates; and if the plaintiff purchased the interests of the deceased upon the basis of resources and liabilities as shown by the journal or cash book or general balance book, being unaware of the liability of the bank so created in excess of its apparent liabilities as shown by the journal or cash book or general balance book, and if such acts and liability could not have been discovered by the inspection of the balances so made otherwise than by checking the entries in the register and comparing them with those in the journal or cash book and general balance book, then the plaintiff has a claim against the estate of the deceased for the amount of such certificates. These propositions the court refused to hold.

By the assignment signed by the appellee it is expressly stated that "it is part of the consideration of this sale and assignment that the said J. A. Hamilton assumes the payment of all obligations, debts and liabilities of the said firm of Hamilton & Wells that the books and papers of said firm may show, or that may be known to exist from any other sources of information, at the date of the delivery of this assignment;  *  *  *  and that the estate  *  *  *  shall be and is hereby discharged from all liability to pay the obligations, debts and liabilities of the said firm  *  *  *  that the books and papers of said firm may show or that may be known at the delivery of this assignment to the said J. A. Hamilton. As to other liabilities, if any, the said J. A. Hamilton is to only pay his proper share." It is not claimed that the certificate register did not correctly show the date of the issue of certificates of deposit, and of their date of payment when payment had been made. The certificate register was a part of the books and papers of the bank, and it is not claimed that the evidence furnished by that certificate register would not correctly show such outstanding certificates. The evidence does show that by a careful examination of the certificate register, together with the journal or cash book and the general balance book, a correct determination could be had of any liability of the bank existing by virtue of the issuing of such certificates. The claim of appellant is sought to be made and is sought to be based on what is shown by the cash register, and what is omitted from the journal and general balance book. These books were in the hands of the appellant for about ten months that he was in charge of the business of the bank before his purchase of the interest of the estate, and by the examination which an ordinarily careful man would have made he could have determined if there were any errors resulting by the issuing of certificates and the failure to account for the money paid to the bank on account of such issue. These propositions

seek to make the liability of the estate depend on what is shown by the journal and daily balance book, and not by them together with other papers of the bank, including the certificate register, and for this reason it was not error to refuse to hold these propositions.

The interest of a partner in the firm property is his proportionate share of what may be left of the value of such property after the payment of the debts of the firm and after the deduction of his indebtedness to the firm, if any exists. When a partner makes a sale of his interest in the firm property the presumption is that he sells only his legal interest, and, in the absence of any contract or agreement to that effect, it cannot be assumed that such partner so selling out sold or intended to sell his own indebtedness to the firm, if any existed. This results from the presumption that arises that in the valuation upon which the sale is based the debt of the selling partner is taken into account and the value of his interest is thereby reduced to that extent as soon as the debt is paid. The sale by appellee of the interest of the firm transferred such interest as the estate had in the firm, which could only be ascertained by the settlement of the partnership accounts, and when such sale was made and the valuation determined of the interest of the estate, the presumption is that there was an adjustment of the accounts of the deceased member at that time and that all accounts were taken into consideration. *Norman* v. *Hudleston,* 64 Ill. 11; *Over* v. *Herrington,* 66 Ind. 365; *Thompson* v. *Love,* 111 id. 272; *Clark* v. *Carr,* 45 Ill. App. 469; *Baldwin* v. *Ball,* 48 N. Y. 673.

By the terms of the contract of assignment, which was accepted and acted on by the appellant, there is no contract, stipulation or agreement by which there is any exclusion of any indebtedness that may be due from the deceased partner from being considered as settled and having been taken into account when the valuation of the share of the estate purchased by appellant under

that assignment was fixed. Outside of the presumption arising from the law, the fact that it appears that on the face of the books the estate owned three-fourths of the capital invested, which was $6000, and that the sale was made of $4500 face value interest of that capital stock for a consideration of $2722, tends to show that such indebtedness must have been taken into account. The evidence introduced for appellee is that of her attorney through whom the sale was negotiated, and it clearly appears that errors in the journal and cash books were alluded to by appellant, as also errors in the certificate register, and after frequent negotiations and much discussion the terms of sale were finally agreed upon and the sale and purchase consummated; that appellant purchased with full knowledge of the facts, or that by exercise of ordinary care he could have had such knowledge by the examination of the books which were in his care.

The frequent changes of the firm, consequent on the deceased having at different times purchased the interests of three different members, effected three different dissolutions and resulted in the organization of four different firms, each of which did business as firms under the name of the Bank of Marissa. The last firm that existed before the organization of the firm of Hamilton & Wells, which existed at the time of the decease of the latter, engaged in business as bankers, received money on deposit and issued certificates of deposit therefor, loaned money and took notes. By the sale of J. H. Hamilton to the appellant and the organization of the firm of Hamilton & Wells the fifth firm was organized. By the organization of these five different firms, and by the purchase of the various interests by the appellant or by the deceased, no interest was acquired by the last firm in the business of the former firms. The evidence for the claimant shows that the claim sought to be probated against the estate of the deceased was not a debt due the firm of Hamilton & Wells, but is an attempt by this

appellant to assert a claim which he claims to exist in favor of various former partners and in which he has no interest. The evidence for the claimant shows that he has attempted to distribute money that was on deposit in the bank on his theory that former partners were entitled to a portion thereof, and now seeks to recover from this estate on the theory that the books were not correctly kept and there is a liability in his favor. He is thus seeking to recover a debt which is not and was never due this firm of Hamilton & Wells. From the evidence introduced for appellee,—that of her attorney through whom the sale was negotiated,—it clearly appears that errors in the journal and cash book were alluded to by appellant, as also errors in the certificate register, and after frequent negotiations and much discussion the terms of the sale were finally agreed upon and the sale and purchase consummated; that appellant purchased with full knowledge of the facts, or what, by the exercise of ordinary care in examining the books which were in his keeping about ten months, would have resulted in such knowledge.

The appellant took by the assignment only the interest of the estate in the assets, and no more. The contract does not affect an assignment of a claim against the estate which the estate held against itself, and such sale is not presumed as a matter of law.

Appellee insists that there was no jurisdiction in the county court to hear and determine the question presented here, whilst it is insisted by the appellant that such jurisdiction existed. The three courts which have considered this question have entertained jurisdiction and determined it from all the evidence, and we deem it unnecessary to discuss that question.

The appellant is not entitled to recover, and there is no error in the record, and the judgment of the Appellate Court for the Fourth District is affirmed.

*Judgment affirmed.*