PETER SCHLICHER

*v.*

LOUIS VOGEL, JOHN R. WHITE and CATHARINE WHITE.

[Filed November 2d, 1900.]

1. Upon the facts established in this case—*Held*, that the defendants, Louis Vogel and Catharine White, are not liable to account to the complainant under their partnership contract.

2. The purchase by one partner of all the interest of another partner, in the absence of fraud, must, of necessity, be an adjustment, as between seller and purchaser, of the accounts of the former with the firm.

*Mr. George O. Vanderbilt* and *Mr. John T. Bird* for the complainant.

*Mr. Edward M. Hunt,* for the defendant Louis Vogel.

*Mr. Frank S. Katzenbach,* for the defendants John R. White and Catharine White.

REED, V. C.

On September 22d, 1897, a partnership was formed between Peter Schlicher, Louis Vogel and John R. White, under the firm name of White & Vogel. Schlicher was not to be known as a partner. Each member of the firm was to put in as capital $1,500. Vogel only paid $150 and gave his note to the firm for the balance—$1,350—which note was endorsed by the firm and discounted in the Princeton bank.

This firm continued in the butcher and meat business at Princeton until October 22d, 1898, when Schlicher bought out Vogel's interest in the firm. One of the terms of the agreement to sell to Schlicher was that Schlicher assume the payment of

the Vogel note of $1,350. It was agreed that the business should be continued in the name of Schlicher & White.

On October 27th, 1898, Schlicher and White entered into a contract, looking to the dissolution of their partnership relations. By the terms of this contract one Lyons was to have charge of the business and collect all moneys of the said firm and deposit them in the Princeton bank, and render an account each day.

It was agreed that no money should be checked out of the bank unless on checks signed by both Schlicher and White. White was to have ten days to buy out the interest of Schlicher, and if he should not do so within ten days, the partnership was to be dissolved.

On November 3d, 1898, they signed another agreement of dissolution, and by it White bought all the horses, wagons, fixtures and stock of the firm. All book accounts were to be put into the hands of Martin W. Hubbard for collection, and the moneys collected were to be put into the Princeton bank, to be drawn on the joint checks of the parties. All obligations of the firm were to be first paid, and the balance equally divided between Schlicher and White and Vogel. The amount collected had not been sufficient to pay the debts of the firm.

Schlicher files this bill for an accounting. The defendants are the two partners White and Vogel, and the wife of Mr. White. The principal question is whether Mrs. White should be called upon to account.

The way she became involved in the firm transactions is that she kept a boarding-house and bought meats from the firm. On September 20th, 1898, Mrs. White was indebted to the firm in the sum of $1,622.15. On October 27th White caused a credit to be given to his wife upon the books of the firm, and had the same amount charged up against himself. This seems to have been done by Mr White upon his own motion and for the purpose of relieving his wife, who was responsible, and substituting himself as the creditor of the firm, who now appears of doubtful responsibility. It is not contended that this arrangement discharged the debt of the wife. The contention is that Mr. Schlicher has discharged her debt to the firm and accepted the

husband as the creditor of the firm, by force of a receipt which he gave to White on December 12th, 1898. It is in these words:

"Received of Mrs. J. R. White one hundred and five 67-100 dollars in full settlement of book account due White and Vogel, or Schlicher and White.

"Dated December 12th, 1898.          PETER SCHLICHER."

The facts preceding the giving of this receipt are as follows: When White bought out Schlicher, the terms were as already remarked, that all debts due to the firm should be collected by Hubbard. White, who proposed to continue the business, wished to retain the trade of the old firm, and for this purpose he did not wish certain of the old customers who owed the firm to be pressed at once by Hubbard. He made a list of such customers and the amounts of their debts, and proposed to give his own note for the amount to Schlicher, and that he himself should thereafter collect those debts. Schlicher consented, and White gave such a note for $1,068.52 payable in fifteen days.

It appears that Hubbard in making other collections inadvertently included some of the debts retained by White, and when the $1,068.52 note matured, White refused to pay it, alleging these collections by Hubbard. Schlicher wrote on November 22d to Hubbard to look into the matter. Upon consultation it was agreed that the amount so collected should be fixed at $105.67. Now, it appears upon the firm books that Mrs. White, after September 21st, 1898 (being the date when her husband canceled her debt on the firm of $1,622.15), had bought meat amounting to $867, and had paid $700 on account, leaving a balance due upon the books of $105.67. The receipt, it is to be observed, is for this amount. Upon the giving of this receipt for this amount as paid, Mr. White paid the $1,068.52 note into the bank to the credit of White and Vogel, and consented that the note of $1,350 given by Vogel and discounted by the firm, which the bank had been carrying, and which had been assumed by Schlicher, should be charged up to the account of Schlicher & White. The question is whether this transaction released Mrs. White from any subsequent claim by Schlicher on account of the $1,622.15 book account, which had been canceled by her

Schlicher *v.* Vogel.

husband. I am constrained to the conclusion that this transaction resulting in this receipt does operate to relieve Mrs. White from this debt. The receipt in its terms is very broad, but, of course, it is open to explanation. Now, it is true that the $1,622.15 is not mentioned in the receipt, and the figures mentioned in it is the exact balance which was due upon the face of the books for purchases made after the change of the charge against the wife to the husband. But it appears in the testimony that Schlicher, at the time he gave this receipt, was fully aware of the fact that the charge against the wife had been shifted on the books to the husband, and he had complained of it. It appears that White, at the time that he asked for this receipt, told Schlicher that his wife was to lend him the money to pay the $1,068.52, and that before she did so she wished to be relieved from all liability to the firm. Schlicher himself admits that White told him that his wife would lend him the money, and I have no doubt of the correctness of White's testimony as to the rest of the conversation.

Now, Schlicher having this information as to the desire of Mrs. White, I am unable to read his receipt in a way which will leave her still responsible for $1,622.15.

In respect to the consideration for the discharge of this amount, it is to be found in the fact that it was a favor to Schlicher to have the $1,350 note which he had assumed entirely paid out of the funds in the bank which were partly the property of Mr. White. And if it be said that this consideration was entirely inadequate to account for the discharge of a good debt of $1,622.15, it is to be remarked, as matters then stood, it was not regarded as a discharge of a debt to this amount, but only a discharge of such a debt against one person and the substitution of another person as the debtor. That Schlicher, at that time, did not regard White as an irresponsible person is quite obvious from the fact that he had shortly before taken the fifteen days' note for $1,068.52 from this person in payment of the same amount of debts to the firm which were entirely good.

I am constrained to the conclusion, therefore, that Mrs. White is not liable to account.

11

It is admitted that Mr. White should account.

It remains to consider the liability of Vogel. Vogel was indebted to the firm (apart from his note given for his portion of the capital of the firm) in the sum of $931.19. He filed a plea setting up that by the agreement between him and Schlicher of October 5th, 1898, he sold to Schlicher all his interest in the partnership; that Schlicher covenanted to pay all the debts of Vogel arising out of or in respect to said partnership, and to pay and discharge all due or owing for or by reason of said partnership, and to save Vogel harmless from the same; and to release and quit-claim the several matters in the bill mentioned, of which an account is sought, and all demands which Schlicher had in respect to the transactions mentioned in the bill.

The only question now is as to the truth of the plea.

An agreement between Vogel and Schlicher dated October 22d, 1898, is offered in evidence in support of the plea. By this agreement Vogel assigned to Schlicher all his right, title, and interest in the firm business, property, accounts and money due. This agreement then provides that Schlicher shall assume the payment of the $1,350 note given by Vogel to the firm for his share of the capital; then Schlicher agrees to release Vogel "of any and all indebtedness of said firm." The plea, therefore, which states that Schlicher covenanted to pay all debts of Vogel, is not true. For all that Schlicher agreed to do (apart from the payment of the $1,350 note) was to release Vogel from all debts of the firm. The $931.19 debt was not a debt of the firm, but a debt due by Vogel to the firm. It was a debt which stood in the same relation to the firm as the $1,350 note of Vogel's, which Schlicher assumed to pay, stood. But I am of the opinion that without any express discharge of Vogel's debt to the firm, the sale itself operated to relieve Vogel from any liability to account to Schlicher. The purchase by one partner of all the interest of another partner, in the absence of fraud, must of necessity be an adjustment as between seller and purchaser of the accounts of the former with the firm.

The purchaser, in getting the interest of the selling partner, gets what the selling partner would be entitled to upon an ac-

counting and settlement with the firm. If his debts to the firm exceed the value of his share of the property of the firm his interest is worthless. But the sale of such an interest involves the application of debts. to credit for the purpose of arriving at the value of the interest. Such a purchase, therefore, is practically an account stated between the parties in respect to their relations as members of the firm.

The following cases exhibit the application of this logical result in cases like the present: *Stoddard* v. *Wood, 9 Gray 90; Lesure* v. *Norris, 11 Cush. 328; Wiggin* v. *Goodwin, 63 Me. 389; Beckley* v. *Munson, 22 Conn. 299; Baldwin* v. *Bald, 48 N. Y. 673.*

Numerous cases upon the point that a sale of a partner's interest to another partner, as between them, extinguishes all accounts upon the books standing against the seller, are cited in *2 Bates Part. 629.*

Mr. Vogel is not liable to account to Mr. Schlicher.