MARY A. LINN *et al.*

*v.*

WILLIAM T. DOWNING *et al.*

*Opinion filed June 23, 1905.*

1. JUDGMENTS AND DECREES—*personal representative of deceased partner cannot revive partnership judgment.* Revival of a partnership judgment after the death of one partner must be in the name of the surviving partner, and not in the name of the personal representative of the deceased partner and the surviving partner.

2. CREDITORS' BILLS—*when equity will not aid creditor to reach property.* If money bequeathed as a common fund by a wife to her husband, in trust for the use of himself and children for their support and maintenance, cannot be subjected to the payment of his debts without injury to the rights of the children, a court of equity will not aid his creditors to reach the fund.

3. SAME—*when annuity cannot be subjected to the payment of debts.* Where a will sets apart a certain sum annually in trust for the maintenance of the husband and children of the testatrix as long as the children shall reside with him, and provides for a certain annuity to the husband for his own benefit after all the children have ceased to live with him, the annuity cannot be reached by his creditors until it becomes the property of the husband disencumbered of the rights of the children. (*ReQua* v. *Graham,* 187 Ill. 67, distinguished.)

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Macon county; the Hon. SOLON PHILBRICK, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the Third District affirming a decree of the circuit court of Macon county, which sustained a demurrer to and dismissed the bill of appellants against appellees. The bill is called by counsel for appellants a creditors' bill, but it is rather a bill to construe the last will of Ida A. Downing, who died testate in said Macon county February 13, 1898. A copy of the will is made a part of the bill, and is alleged

to have been duly probated on May 10, after the death of testatrix, and her husband, William T. Downing, was duly appointed executor, as provided in the will.

It is alleged that on June 10, 1898, William H. Linn and William R. Scruggs, late partners as Linn & Scruggs, obtained a judgment in the circuit court of Macon county against William T. Downing for the sum of $2427.75 and costs of suit; that on June 19, 1900, William H. Linn, being the owner of one-half of said judgment, died testate, leaving by his will Mary A. Linn his sole legatee and beneficiary, who thereby became the legal owner of said judgment jointly with William R. Scruggs; that on November 17, 1902, upon a writ of *scire facias* issued in the name of Mary A. Linn, and Mary A. Linn, executrix, etc., and William R. Scruggs, said judgment was revived; that execution was issued upon said revived judgment and returned "no property found;" that said judgment is in full force and effect, not having been appealed from, vacated or modified, and is now owned by the complainants. A copy of the will of Ida A. Downing is then attached, as follows:

"*Item 1*—I give and devise my homestead, containing sixteen and one-half acres off of the north side of the north-west quarter of the south-west quarter of section No. 2, in township No. 16, north, range No. 2, east of the third principal meridian, in Macon county, State of Illinois, to my husband, William T. Downing, in trust, for the uses and purposes hereinafter expressed:

"(*a*) For a home for my said husband and my mother, Susan V. Williamson, during their natural lives and during the life of the survivor of them.

"(*b*) The above described real estate shall also be a home for my children until they, respectively, shall attain the age of twenty-one years. If any of my children remain unmarried after they are twenty-one years of age and shall desire to live in the house on said premises above described, they shall be permitted to do so until they, respectively,
216–5

marry; or if they shall not marry before they, respectively, arrive at the age of thirty years, then they, respectively, shall have the right to live in said home until they, respectively, arrive at said age of thirty years. If my daughter, Anna Maud, shall marry, either before or after she shall arrive at the age of twenty-one years, and shall desire to live on the said premises with her father, she, with her husband, shall have the right to live thereon, provided, always, her father shall be willing that she and her husband may live with him on said premises.

"(c) It is my express will and desire, and the devise in this item of my will is made upon the express condition, that the real estate in this item described shall be and remain a home for my husband during his natural life, and for my mother and my children, as already herein provided.

"*Item 2*—I give and bequeath to my said husband, in trust, all my personal property, of every kind and description, other than moneys and credits, for the use and benefit of himself and for the use and benefit of my mother during their lives and during the life of the survivor of them, and for the use and benefit of my children until they, respectively, shall arrive at the age of twenty-one years. Part of my said personal property consists of horses and vehicles. In case my said husband, as such trustee, shall deem it necessary to sell any of the horses or any of the vehicles he shall be at liberty to do so, and with the proceeds of such sale and out of other moneys which shall come to his hands as such trustee, as hereinafter provided, he shall purchase such other horses and such other vehicles as he may deem necessary for the use of himself, my mother and my children, while they shall live with him on the real estate described in item 1 of this will.

"*Item 3*—I give and devise to my said husband, in trust, twenty-two acres off the south side of the north-west quarter of section 2, township 16, north, range 2, east of the third principal meridian, in Macon county, Illinois, (particularly

describing the same;)  also one hundred and sixty acres of land, more or less, in Marion county, Illinois; * * * also lot No. 26 in block No. 4, of Enterprise addition to the city of Decatur, Macon county, Illinois; also lot 13 in block 1 in Henry A. Wood's second addition to the city of Decatur, aforesaid; also a lot in Riverside addition to the city of Decatur, aforesaid; * * * also all other real estate which I may own in the city of Decatur, aforesaid, and not herein specified or referred to; also eighty acres of land in the State of Kansas, the particular description of which land is not at present known to me, but which tract is all the land which I own in the said State.

"*Item 4*—I give and bequeath to my said husband, in trust, all the moneys and credits which I may have and own at the time of my death, for the purposes hereinafter named.

"*Item 5*—I hereby order and direct that my said husband, as trustee, after my decease, shall sell all the real estate described in item 3 of this will and in said item referred to, although not particularly described, at such time or times and on such terms and for such price or prices as he may deem best.  He is hereby authorized and empowered to execute all deeds of conveyance which may be necessary to vest in purchasers title in fee simple to such real estate as may be purchased by them.  He shall lend the money received from time to time on sales of real estate, on the security of farm lands in the State of Illinois or on the security of inside property in the city of Decatur, aforesaid, but in no case shall he lend more than fifty per cent of the fair cash value of any piece or parcel of farm land or inside city property offered as security for a loan.  My husband, as such trustee, shall convert, with all convenient dispatch, all credits which may be held by me at the time of my death into money, and such money, together with all money which I may have at the time of my decease, he shall lend in the same manner as herein provided for the investment of money which shall arise from the sale of real estate.

"*Item 6*—My said husband, as such trustee, out of the money which may come to his hands under item 5 of this will, shall make payments as follows:

"(*a*) He shall pay all taxes and special assessments levied and assessed against the real estate and personal property which shall come into his possession and under his control as such trustee under this will, from year to year.

"(*b*) He shall keep the house, stables and fences situated on the said sixteen and one-half acres of land, as well as the fences on other portions of the real estate described in this will, in good repair, and shall also keep the house, stables and any other out-buildings on said sixteen and one-half acres suitably insured in solvent companies.

"(*c*) In case the said house, stables or other out-buildings shall be destroyed by fire, the insurance money which may be received from the companies in which risks may be taken out, shall be devoted to the erection of other houses, stables or out-buildings on said sixteen and one-half acres in lieu of such as may be destroyed by fire, and in case the amount of insurance money received shall not be sufficient to re-place the buildings destroyed, then my husband, as such trustee, shall appropriate so much of the money in his hands as trustee as may be sufficient to re-place the building or buildings destroyed, and in case of such re-placement my husband, as such trustee, shall exercise his discretion as to the kind of buildings to take the place of those destroyed, and he shall also be permitted to exercise his judgment as to the amount which shall be expended in re-placing the destroyed building or buildings.

"*Item 7*—My said husband, as such trustee, shall, out of the money in his hands belonging to my estate, set apart an allowance of $1200 per annum to meet the expenses of the maintenance of himself, my mother and my children, so long as my children shall, under the provisions of this will, live with their father on the said sixteen and one-half acres of real estate, which tract I hereby designate as my home-

stead, such amount of $1200 to be retained by him in monthly installments of $100 each, and shall be by him devoted to the purposes in this item specified.

"*Item 8*—When said real estate, except said property designated as my homestead, shall all be sold, my said husband, as such trustee, shall set apart out of the fund $5000 to each of my children, and shall keep the same loaned, with accumulations thereof, until my children, respectively, shall attain the age of thirty years, and as they shall, respectively, attain such age, he shall pay to them, respectively, the sum of $5000 and its accumulations, provided the amount of moneys of my estate still remaining in his hands shall be sufficient to produce an annual income of $600 over and above the taxes and repairs on the buildings on the homestead, which sum of $600 I hereby expressly declare shall be an annual allowance for the maintenance of my said husband during his natural life, after my children, respectively, shall have attained the age of thirty years. In case none of my children shall reside with their father on the homestead after attaining the age of twenty-one years, then the said allowance of $1200 per annum, in item 7 of this will specified, to my husband, as such trustee, shall be reduced to $600 per annum, which amount shall thereafter be kept and retained by him out of the moneys belonging to my estate, in monthly installments of $50 each; but this provision shall in nowise affect his right to the use and occupation of the said homestead so long as he shall live. In case any of my children, after arriving at the age of twenty-one years, shall not continue to live with their father on said homestead, then the said allowance of $1200 to my said husband, as aforesaid, shall be abated in the amount of $200 per annum, and as each one of my children thereafter shall cease to reside on said homestead with their father, the said sum of $1200 per annum shall be abated in the sum of $200 per annum until all of my children shall cease to live on the said homestead under the provisions of this will, when, as hereinbefore provided, the

entire allowance to my said husband for his maintenance shall be $600 per annum. If in the judgment of my said husband, as such trustee, it may become necessary for the welfare of my children who shall cease to live on said homestead with their father after they shall arrive at the age of twenty-one years that he should pay to each of such children the sum of $200 per annum, being the abatement of said allowance of $1200 when each child shall cease to live on said homestead, then he shall be at liberty to pay such sum of $200 per annum to each of such children out of the income of moneys belonging to my estate and not otherwise appropriated. In case my daughter, Maud, shall marry before she is twenty-one years of age and shall cease to live at the said homestead, then the said trustee shall pay her $200, annually, out of the income of moneys belonging to my estate and not otherwise appropriated by the provisions of this will.

"*Item 9*—After the death of my said husband the said sixteen and one-half acres of land, being the homestead, aforesaid, shall be divided equally between my children, they to take their respective shares in fee simple, the descendants of any deceased child to take the portion to which the parent, if living, would be entitled.

"*Item 10*—On my children, respectively, arriving at the age of thirty years, if there shall not be sufficient money in the hands of my said husband, as trustee, to meet the amount of $5000, and accumulations, for each of my children, as provided in item 8 of this will, after first maintaining intact a sufficient fund to produce the said amount of $600, annually, to my said husband, then and in such case such children, respectively, shall be paid such a proportion of $5000, and accumulations thereof, as the fund then in the hands of my husband, as trustee, will permit.

"*Item 11*—I hereby expressly declare that all the devises, bequests and provisions made in and by this will for the use and benefit of my said husband shall not at any time be subjected to the payment of any indebtedness of his existing

at the time of my death or any indebtedness which he may thereafter contract, it being my true intent and purpose, in and by the provisions of this will in favor of my said husband, to secure to him a reasonable maintenance during his lifetime which shall be beyond the reach of his creditors."

Items 12, 13 and 14 relate to the appointment of the husband as executor and trustee, and his successor in case of his death.

. It is further alleged, in substance, that the mother of the testatrix is dead; that the daughter, Anna, is married to one John Patin, and resides with her husband in the city of New Orleans, Louisiana; that the son Clifford has reached his majority but William is still a minor, both of said sons continuing to reside with their father, William T. Downing, on the homestead mentioned in the will; also, that the husband did not renounce the provisions of the will for his benefit but elected to take the same, and has no other property than that which is vested in him thereunder; that complainants have no knowledge as to the extent to which the trust created by said will has been executed, and that if an execution were issued and levied on the interest of said William T. Downing and the same sold, but a nominal sum would be realized therefrom; that the annuity bequeathed to him was accepted in lieu of his dower and should be subject to the payment of said judgment. The prayer is that the will be construed in so far as it creates an annuity in William T. Downing, and that he be required to give a correct report of the extent to which the trust has been executed, and that in the event such report discloses that he has not executed said trust to such an extent as to give him the full benefit of said annuity or other beneficial interests under the will, the court order him to execute the same; that the master in chancery compute the amount due the complainants upon their judgment and the said William T. Downing be ordered to pay the same, and in default of such payment his annuity or other benefits be paid in satisfaction of said judgment upon such equitable

terms as may be determined by the court. There is also a prayer for general relief.

Jack & Deck, for appellants.

Hugh Crea, and Hugh W. Housum, for appellees.

Mr. Justice Wilkin delivered the opinion of the court:

It is insisted by counsel for appellees that the bill fails to show a valid judgment and execution as the basis for a creditors' bill, for the reason that the original judgment set up was obtained in the name of the firm of Linn & Scruggs as partners, and was attempted to be revived by *scire facias* in the names of the personal representatives of Linn and the surviving partner, Scruggs, whereas such revival could only have been in the name of the surviving partner. The rule contended for is undoubtedly correct as applied to judgments of a firm or co-partnership, the law being that the surviving partner becomes vested with the title to all the partnership property for the purpose of settling the affairs of the firm, and until such settlement is made the representative of the deceased partner has no title or legal interest in the partnership assets. *Talcott* v. *Dudley,* 4 Scam. 427; *People* v. *White,* 11 Ill. 341; *Miller* v. *Jones,* 39 id. 54; *Clay* v. *Freeman,* 117 U. S. 97; *Hamilton* v. *Wells,* 182 Ill. 144.

It seems to be urged on behalf of the appellants that the averments in their bill are not inconsistent with the theory that the original judgment was obtained by Linn & Scruggs jointly, and not as partners. Applying the rule that a pleading should always be construed most strongly against the pleader the contention cannot be sustained. The allegation, so construed, clearly means that the original judgment was obtained in the firm name.

Objection is also made by counsel for appellees as to the form of the judgment of revival, or, rather, that no judgment of revival was in fact entered. It is not in technical form, but if it had been rendered in the name of the proper

party it would have been sufficient upon collateral attack. We are of the opinion, however, that it was not a valid existing judgment, the surviving party, in whom the legal interest was, not having sought its revival, and treating the bill as a mere creditors' bill it could not be sustained for this reason.

Aside from this consideration, however, the circuit court properly sustained the demurrer to the bill on the construction of the will of Ida A. Downing. The question was whether her husband, William T. Downing, took such personal interest in the property therein bequeathed as could be subjected to the payment of his debts. That question must be decided upon the interpretation of the first, (construed with the ninth,) second, seventh and eighth items of the will. The first item, as will be seen, (together with the ninth,) gives to the husband an estate in the homestead for a home for himself and the mother of testatrix during their natural lives and during the life of the survivor of them, and also for a home for the children of testatrix until they attain the age of twenty-one years, etc., the devise being upon the expressed condition that the real estate described in that item shall be and remain a home for the husband during his natural life and for the mother and children as therein provided. Two of the children were residing with the husband upon the estate of homestead at the time the bill was filed, and the rights of such children were clearly so connected and blended with his interest as to make it impossible to separate them, even if the value of the homestead had been shown to be such that it could be subjected to and sold on execution. So by the second item the personal property is given to the husband "for the use and benefit of himself and for the use and benefit of my mother during their lives and during the life of the survivor of them, and for the use and benefit of my children until they, respectively, shall arrive at the age of twenty-one." It is true that that clause gives the husband the power to sell certain of the personal property if he shall

see proper, but with the requirement that he shall invest the proceeds of said sale in such other personal property of the same kind "as he may deem necessary for the use of himself, my mother and my children, while they shall live with him on the real estate described in item I of this will." He is not given an unqualified power of disposition. The clause, taken as a whole, does not give him the title to the personal property, but places it in his hands in trust for the use of himself and the other beneficiaries therein named.

The complainants insist upon the sufficiency of their bill more particularly under the seventh and eighth items. It will be seen by reference to the foregoing copy of the will that the trustee is directed by said paragraphs to convert into money all of the estate except the homestead, and to loan the same upon certain securities. The estate is devised to him in trust for such purposes, with the direction that he shall set apart an allowance of $1200 per annum to meet the expense of the maintenance of the mother, children and himself, so long as the children reside upon the homestead. As they reach the age of twenty-one and cease to live with him the allowance of $1200 is to be reduced, and when all cease to live with him the amount is fixed at $600 for his benefit alone. The mother being dead and the daughter no longer residing upon the homestead, and the husband, with the two sons, continuing to reside in the home, the allowance at the time the bill was filed, according to the provisions of the bill, would amount to $1000, and the contention of counsel for the appellants is, that of that amount $600 belongs to the husband as his absolute individual estate, liable for his debts. The will creates an active trust in him for the benefit of himself and the sons, the latter having just as much right to the use of the $1000 as he has. That sum is for their support and maintenance as well as his. He has no more right to any definite part of the $1000 than they have, and a court of equity would, if necessary, require him to carry out the terms of the trust and expend the money for their support

and maintenance. In order to accomplish the ends sought by this bill it would be necessary either to take the whole $1000, depriving the children of their entire support, or separate the fund, giving the husband $600 and the children the balance, and then subject the husband's portion to the payment of his debts, which would violate the express terms of the will. While it is true that a court of equity will aid a creditor in reaching the property of a husband where it is simply a question between himself and such creditor, as we held in *ReQua* v. *Graham,* 187 Ill. 67, yet where the interests of third parties intervene those interests must be protected, and if the relief prayed cannot be granted without injury to them it must be denied. The $1000, so long as the infants live with the father, is a common fund held in trust to support and maintain all the beneficiaries. No one of them has such a separate and distinct interest in it as can be reached by a creditor. The entire estate constitutes a trust in the hands of the husband in this case, and when the children arrive at the age of thirty years, then, and not until then, can there be a distribution.

The contention of appellants is, that as the husband took the provision of the will in exchange for his right of dower, he therefore took as a purchaser and his allowance became subject to the payment of his debts, citing *ReQua* v. *Graham, supra.* In that case, however, the wife bequeathed to her husband, John Nichols, the definite annual sum of $1800 during his natural life, to be paid quarterly in equal installments of $450 each, depositing the money to his credit in certain banks in Chicago subject to his order, which annuity was expressly stated to be in lieu of all other interests in her estate, and we there held that as the annuity was given in lieu of dower, and as the husband had a right to accept or reject it, it was merely an offer to purchase his interest and the annuity was liable for the payment of debts. While this will does not provide that the gift to the husband shall be in lieu of his dower it doubtless should be given that effect

upon the acceptance of the benefits of the will. But the questions involved here are very different from those arising in the case cited. There the annuity was given to the husband absolutely, and deposited subject to his order. The rights of other beneficiaries were in no way connected with or made dependent upon it. Here, as we have seen, it is impossible to ascertain now what the individual rights and interests of the husband are. When, if ever, the time arrives that the $600 annuity, as provided in the seventh and eighth clauses of the will, becomes the property of William T. Downing, disencumbered or independent of the rights of the children, that $600 may be subjected to the payment of his debts, but until that time arrives it cannot be reached by his · creditors.

We have not deemed it necessary to consider whether or not, if all that the complainants claim in their bill be true, they would not have a complete and adequate remedy at law, but are of the opinion that in the view above expressed the demurrer to the bill was properly sustained. The judgment of the Appellate Court will accordingly be affirmed.

*Judgment affirmed.*