[Civ. No. 3573.   Fourth Dist.   May 27, 1947.]

GUY F. BARNES, Plaintiff and Appellant, v. JAY B. MOORE, Defendant and Appellant.

West, Vizzard & Howden for Plaintiff and Appellant.

Siemon, Maas & Siemon, Alfred Siemon, Walter L. Maas, Jr., and Bennett Siemon for Defendant and Appellant.

BARNARD, P. J.—This is an action for an accounting after dissolution of a partnership. The plaintiff, having bought the defendant's interest, now seeks to recover a claimed shortage in his original contribution.

The plaintiff bought a share in a refrigeration business started by the defendant. The partnership agreement was dated October 23, 1944. It provided that the building should be erected with partnership funds and that it, with the land and equipment, were to be partnership assets; that Barnes

was to put $4,000 into the partnership and give Moore a note for $3,450 and have a one-fifth interest; that Moore was to contribute $21,250 cash on that date; that he was further to borrow $12,000 from a bank, secured by a mortgage on the partnership property, contributing the $12,000 to the business; and that he was to have a four-fifths interest. The contract further provided that at any time either party might make an offer to buy or sell at the same price, with the right to exercise either option if the other failed to do so.

In accordance with the agreement the plaintiff devoted his full time to the business, drawing a stipulated salary, and the defendant drew lesser amounts for less service. On July 26, 1945, the defendant, in writing, offered to buy the plaintiff's one-fifth interest for $11,000 or to sell his own four-fifths interest for $44,000, with the understanding that all debts owed by the partnership must be paid. On August 4, 1945, the plaintiff gave a modified written acceptance, agreeing to buy the defendant's four-fifths interest for $44,000, stating that this amount would be deposited in a bank with instructions that it be paid to the defendant upon the execution of such documents as might be agreed upon, and ''upon the completion of accounting as to obligations of the partners of the business.''

After some discussion between the partners an escrow agreement was executed at a bank on August 7, 1945, and the $44,000 was deposited in escrow. The escrow agreement provided that the $44,000 should be paid to the defendant, less the amounts chargeable to him, when title to the partnership property could be vested in a third party, from whom the plaintiff was borrowing the $44,000. This required a conveyance of the real property from the defendant and the payment of the $12,000 which he had borrowed on the property and put into the business. This was done and this amount was charged to the defendant.

The escrow agreement provided that ''The following adjustments ONLY are required in this escrow'': Then followed provisions that insurance and taxes were to be prorated; that the buyer would pay $1,881 for merchandise and supplies; that the buyer would pay the seller $200 on certain notes; that the seller would pay the buyer $937 for key deposits and accrued payroll taxes; that the buyer would pay the seller $4.00 in settlement of a salary account; that ''Buyer is to receive all monies on hand and in bank and accounts receivable and is to assume the accounts payable of Moore's

Refrigerator Locker Service''; and that the seller would furnish any papers necessary to a complete transfer of this business and its equipment.

The transfer was completed and the escrow closed on August 22, 1945, a balance of $30,409 being paid to the defendant. A complete statement was furnished by the bank to both parties, the one to the plaintiff showing that he still owed $92 to the bank, which he paid. Before the escrow was started the plaintiff had obtained an audit of the books of the partnership by an accountant, and his report was on hand and used to a certain extent in drawing the escrow agreement. This report disclosed that the defendant, who had agreed to contribute $21,250 in cash on October 23, 1944, had put in $10,000 in cash on that date and had also made prior expenditures of $6,790.06, for which vouchers appeared in the partnership books, and that this left a deficiency of $4,459.94 on this item. It does not appear in the auditor's report or anywhere in the record that Moore was credited anything for the land on which the plant was located.

When Barnes first received the auditor's report showing this original deficiency he demanded that Moore make it good, which he refused to do. The parties then went to the bank and entered into the escrow agreement, providing for the sale of the business and property at the offered price, nothing being said as to the size of Moore's interest or about this claimed shortage. Shortly after the escrow was closed and the transfer completed this action was brought, the complaint alleging that the defendant had failed to pay $4,459.94 into the business and still owed that amount, and also that he had withdrawn and withheld $6,370 from the business. The answer admitted that the defendant had not paid $4,459.94 into the business but alleged that this matter had been liquidated and denied that the amount was still owed. As an affirmative defense, the offer of sale, the conditional acceptance, and the agreement of the parties as consummated through the escrow were set up as a full settlement and adjustment of all partnership matters.

The findings set out in full the partnership agreement, the offer of sale, the conditional acceptance and the escrow agreement, as they were executed by the respective parties. It was found that the plaintiff had contributed the $4,000 to the partnership; that the defendant had contributed $22,000 in cash and that he had further transferred to the partnership properties which he had owned and operated in said

locker business of an agreed value of $6,790.06; that at the time of dissolution he owed $4,459.94 to the partnership as a deficit in his capital contribution; that the plaintiff was entitled to one-fifth thereof since the defendant was entitled to four-fifths of said asset upon dissolution; and that the purchase by the plaintiff of the defendant's interest was made subject to an accounting. As conclusions of law, it was found that the partnership was dissolved at the closing of the escrow; that the purchase by the plaintiff of the defendant's interest was subject to an accounting; that at the time of dissolution the defendant owed the partnership $4,459.94; and that the plaintiff was entitled upon dissolution to one-fifth of this deficit.

Judgment was entered to that effect and both parties have appealed. The plaintiff's appeal is based on the contention that he should have had judgment for $4,459.94, the amount of the deficit, since he had purchased all of the defendant's interest. It is further contended that he should have had judgment for an additional $6,790.06, it being claimed that this amount was improperly credited to the defendant in the accounting. On his appeal the defendant contends that the judgment should have been in his favor since the sale covered such interest as he actually had and involved an adjustment of all accounts, fully settling all partnership matters.

With respect to the plaintiff's appeal, two observations may be made. His claim for an additional $6,790.06 is based upon a mere technicality, is neither in accordance with the facts nor with the principles of equity, and is obviously without merit. His claim for the full $4,459.94 depends on whether he was buying such interest as Moore had, or a guaranteed full four-fifths interest. It is unnecessary to further consider this appeal in view of our decision on the defendant's appeal.

Section 2416 of the Civil Code provides that any partner shall have the right to a formal account as to partnership matters when the right exists under the terms of any agreement or ''whenever other circumstances render it just and reasonable.'' The agreement here provided that upon termination of the partnership each partner would account for and adjust ''all things relating to this business.'' The sale was such a termination, and would naturally include an adjustment of their respective accounts with the business and exclude the necessity for any other ''formal account.'' ██ In the absence of fraud or a special agreement there is no occasion for a further account when one partner buys out the

interest of the other on specific terms. This is especially true where the buyer knows the facts which might otherwise call for a further accounting. ■ Such a sale and purchase includes and is, in itself, a form of accounting which is ordinarily sufficient, and which should be conclusive unless good reason is shown to the contrary. It appears here that Barnes gave his full time to the business, with an opportunity to know its condition, and that he had his attention directly called to Moore's contribution shortage by the auditor's report before he went into escrow and before he agreed to the final terms of the sale. After Moore had refused to recognize this liability in connection with this proposed sale of his interest Barnes entered into the escrow agreement which superseded the prior negotiations, and the sale and transfer were completed in accordance therewith. No circumstances appear which make it just and reasonable that a further "formal account" be had.

The general rule is thus stated in *Wilbur* v. *Wilbur,* 197 Cal. 1 [239 P. 332], in which case it was claimed that the selling partner had withheld $1,000 or more of partnership money. "It is the law of partnerships that when one partner purchases the interest of the other the transaction presumptively includes a final settlement of all partnership indebtedness existing between the partners. (Bates on Partnership, §§ 629, 630, pp. 664, 665; *Hattenhauer* v. *Adamick,* 70 Ill.App. 602; *Edens* v. *Williams,* 36 Ill. 252.)" In *Schlicher* v. *Vogel,* 61 N.J.Eq. 158 [47 A. 448], it is said: "The purchase by one partner of all the interest of another partner, in the absence of fraud, must of necessity be an adjustment, as between seller and purchaser, of the accounts of the former with the firm. . . . Such a purchase, therefore, is practically an account stated between the parties in respect to their relations as members of the firm." In *Thoma* v. *Reisch,* 214 Ill.App. 328, it is said: "The general rule is that when a partner sells his interest in the firm property, the presumption arises that, in the valuation upon which the sale was based, the debt of the selling partner is taken into account, and it cannot be assumed that such partner sold or intended to sell his own indebtedness to the firm, if any existed." In *Hamilton* v. *Wells,* 182 Ill. 144 [55 N.E. 143], the reason for this rule is thus expressed: "This results from the presumption that arises that in the valuation upon which the sale is based the debt of the selling partner is taken into account, and the value of his interest is thereby reduced to that extent."

■ While conceding this general rule, the plaintiff argues that this presumption is rebuttable, and that the evidence here overcomes any such presumption. He argues that the defendant's contribution shortage was a debt due on an open account; that it was an account receivable; and that an intention to transfer this debt to him appears in the provision of the escrow agreement which reads: "Buyer is to receive all monies on hand and in bank and accounts receivable and is to assume the accounts payable of Moore's Refrigerator Locker Service."

This provision refers to and seems to relate solely to the money and the accounts, receivable and payable, of the busi-. ness being conducted by the partnership. The debt here in question arises from a contractual obligation as between the partners, and is not one which is usually considered as an account receivable. The language used strongly implies an intention to refer to such accounts as had become receivable through the operation of the business named, as a going concern, and not to some separate contractual obligation as between the partners themselves.

Moreover, the evidence shows that the parties did not intend this provision as a transfer of this debt. It clearly appears from the evidence that the defendant did not so intend, and that he intended this sale as a full settlement of all matters, including any such debt. The plaintiff's own evidence discloses that he did not intend this provision to include this claimed contribution shortage, and that he purposely omitted that matter from the escrow agreement. He testified that before the escrow agreement was executed he knew that Moore was short $4,459.94 in his original contribution; that he asked Moore to straighten it out, which Moore refused to do; that the parties then went to the bank and made the escrow agreement; that he said nothing to the escrow agent who prepared the agreement about this shortage; that "I thought that could be settled any time"; and that since he was buying the business he said nothing about this matter as he figured in his own mind that he could collect this in court. When asked if it occurred to him that the amount he was paying for the business might be reduced by charging the defendant with this shortage he replied: "I never thought anything about that, I wanted to buy the business, and there was a price set on it and I paid it."

This debt was not specifically transferred by the terms of the escrow agreement and there is no evidence to overcome

the presumption that this sale was a full settlement of partnership debts between the partners. To overcome this presumption would require evidence indicating either an agreement to the contrary or an intention to leave something unsettled. Certainly evidence of a secret intention by one party to exclude some matter from the general adjustment being made, to keep that debt alive, and to later sue the other party, who understood that a full settlement was being made, would not be sufficient.

Nothing more here appears than that Barnes, after he was told that Moore would not consent to being charged this amount, decided and agreed to go ahead with the sale, knowing Moore's actual interest in the partnership, and then purchased Moore's interest through a consummation of the escrow agreement, which did not specify the amount or extent of that interest, with a secret intention that a different result should obtain. Not only does it appear that Moore relied on the sale, thus arranged, as being a full settlement of this debt, but the conclusion is inescapable that Barnes misled him into so thinking, with the secret intention of getting the property and later suing Moore for this debt, thus reducing the purchase price he was agreeing to pay. This conduct not only violated every principle of equity, but it well illustrates the reasons behind, and the necessity for, the general rule to which we have referred.

This rule is here applicable, and the resulting presumption was not dispelled or overcome. The effect of the evidence is quite to the contrary. It follows that, under the law, neither the evidence nor the findings are sufficient to support the judgment, and the conclusions drawn are erroneous.

The judgment is reversed. The defendants to recover costs on appeal.

Marks, J., and Griffin, J., concurred.