[S. F. No. 13460. In Bank.—January 15, 1932.]

BANK OF ITALY NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Association), Respondent, v. JOSEPH S. BETTENCOURT et al., Appellants.

John H. Crabbe for Appellants.

J. E. McCurdy for Respondent.

SEAWELL, J.—On September 28, 1925, J. E. Francis and John Miramontes, in their names, began a personal property foreclosure action in the Superior Court of the County of San Mateo against Joseph S. Bettencourt and wife, Mary Bettencourt, and the Bank of Half Moon Bay and certain fictitious defendants. The Bank of Half Moon Bay was made a party defendant on the theory that it claimed some interest in the subject matter of the action. The case was tried by the court, a jury trial having been expressly waived.

Said plaintiffs based their causes of action upon two counts. The first consisted of a one-year promissory note in the sum of $900, executed July 1, 1924, by defendants Bettencourt and wife in favor of said plaintiffs Francis and Miramontes, and secured by a chattel mortgage of a number of head of livestock and miscellaneous personal property used by the Bettencourts in conducting a dairy business. The second count was also upon a one-year prom-

issory note in the sum of $500, secured by chattel mortgage, executed by the defendant Joseph S. Bettencourt to Manuel Alves, July 1, 1923, which note was, on September 24, 1925, together with said chattel mortgage, assigned to plaintiffs Francis and Miramontes. On October 5, 1925, defendant Bank of Half Moon Bay appeared by general demurrer, which demurrer was, on October 23, 1925, overruled. Whether any other of said defendants were served does not appear. No other action was taken in said proceeding until June 27, 1928, on which day the present plaintiff, through its manager, M. J. Bettencourt, who was also manager of the Bank of Half Moon Bay before it became a branch of the Bank of Italy National Trust and Savings Association, a national association, filed an affidavit in said proceedings setting out *in extenso* the transfer and sale of all the stock, property and assets of said Bank of Half Moon Bay to said Bank of Italy National Trust and Savings Association, made March 1, 1927, which thereby became the successor of said Bank of Half Moon Bay in the banking business formerly conducted by it, including the promissory notes and chattel mortgages which form the basis of this action, and praying for an order substituting the Bank of Italy as plaintiff in the place and stead of Francis and Miramontes, as permitted by the provisions of section 385 of the Code of Civil Procedure. On July 29, 1928, the judge of said superior court, upon the faith of said affidavit, made an order substituting this plaintiff in the place and stead of former plaintiffs Francis and Miramontes, dismissed the defendant Bank of Half Moon Bay from the action, granted this plaintiff the right to file its amended complaint setting forth its interest, and ordered that a copy of said amended complaint be served upon all parties defendant herein. Accordingly, on August 4, 1928, said so-called amended complaint was filed, differing from the first only as to said substituted party plaintiff and the omission of the Bank of Half Moon Bay as a party defendant. Defendants Bettencourt in due time answered said amended complaint and denied that either or both of them had ever appeared before a notary public or any other officer authorized to administer oaths and acknowledged or executed said chattel mortgages, or that the same were duly acknowledged or verified so as

to entitle either to be recorded; alleged that each of them is unable to read or write in the English language and that their understanding of the English language was very poor; on information and belief denied the assignments and denied the indebtedness and alleged that on February 11, 1926, and on September 25, 1926, the Bank of Half Moon Bay received from defendants livestock, goods, wares and merchandise more than sufficient to pay in full the indebtedness evidenced by said promissory notes and out of the proceeds of the sale of said livestock, goods and merchandise said bank satisfied and discharged said indebtedness of defendants, and that said assignments were made for the purpose of defrauding said defendants; denied that any demand was made upon defendants or either of them. Defendants prayed for the cancellation of said notes and for the satisfaction of each of said mortgages. No evidence was offered tending to support the allegations of the answer to the effect that the mortgages were not properly executed or acknowledged by defendants.

Judgment went for the full amounts appearing on the face of said notes together with interest and costs, and for the sale of said mortgaged property, and for such a deficiency as might thereafter exist. The appeal is taken from said judgment under the provisions of section 953a et seq. of the Code of Civil Procedure. ■ The judgment contains the statement that findings of fact and conclusions of law were waived by the attorneys of the respective parties, but the brief of appellants contains a sharp denial of said waiver. It is not made to appear in the record or by affidavit or otherwise that the recital of the judgment in th·s respect is not true. Error must be affirmatively shown. It cannot be presumed that no waiver occurred. The necessary intendment in support of the judgment is the other way. One who claims the court below committed error in failing to find the facts must, by bill of exceptions, affidavit or in some appropriate method, make it affirmatively appear that no waiver of findings had in fact occurred in the court below, otherwise the intendment must go to support and not overthrow the judgment rendered. (*Mulcahy* v. *Glazier*, 51 Cal. 626; *Baker* v. *Baker*, 139 Cal. 626 [73 Pac. 469].)

No motion for a new trial was made by appellants and no steps were taken to refute or impeach the statement in the judgment that findings had been waived, and therefore the alleged misstatement of fact is raised for the first time in this court by a denial contained in appellants' brief.

A waiver of findings would not, of course, be made during the trial of a cause, as findings necessarily follow the submission of the case for decision, and, together with the judgment, constitute the final and concluding acts of the trial of a cause. A waiver made after hearing concluded would not be included in the reporter's transcript, and it does not constitute a part of the judgment-roll as defined by statute, nor do the minutes of the court appear at any place in the record as prepared upon the demand of appellants. No attempt has been made to show by affidavit, bill of exceptions or otherwise that findings were not waived in the manner provided by section 634 of the Code of Civil Procedure. Neither was the judgment challenged as being false in the particular complained of. Error will not be presumed, but must affirmatively appear. The record being silent on the subject, the waiver of findings by counsel must be presumed unless the contrary affirmatively appears.

That the indebtedness secured by the chattel mortgages was properly assigned to the Bank of Half Moon Bay, there can be no substantial doubt. Appellants complain quite bitterly about the failure of respondent to introduce in evidence the formality and mechanics by which the assignment or transfer of said indebtedness was made to plaintiff Bank of Italy. That the Bank of Italy purchased, took over and became the successor of the Bank of Half Moon Bay pursuant to a plan of banking mergers and transfers well known to the business public during a period ending some two years ago, there is no room for disagreement. In the state of the record before us, we would not be justified in holding that the general question, "Did the Bank of Italy purchase the Bank of Half Moon Bay and its properties?", and the answer, "Yes", given to the question, are not of sufficient evidentiary value to sustain a finding of successorship and transfer, notwithstanding that it was objected to as being incompetent and calling for a conclu-

sion of the witness. The objection as to the transfer and successorship seems only to be technically made for the sake of the record, as it cannot be seriously doubted from an examination of the entire case and from the attitude of counsel that the plaintiff was in fact the owner of said promissory notes and mortgages. No attempt was made by the appellants to show by cross-examination or otherwise that plaintiff was not the owner of said notes. Surely no other action could be maintained to compel a second payment of said notes.

▮ There is undisputed evidence that Joseph S. Bettencourt paid to plaintiff's predecessor, Bank of Half Moon Bay, in the month of November, 1925, one amount of $1,050, and another of $1400, aggregating $2,450. This sum, appellants claim, should have been applied to the payment of said notes secured by chattel mortgages. It is admitted that no part of said amounts was so applied. A few other lesser amounts were paid to said Bank of Half Moon Bay, no part of which was credited to the payment of said notes.

It appears from the record that the Bettencourts at all the times pending said note transaction were debtors of the Bank of Half Moon Bay in a sum much larger than the aggregate sum of said notes in another transaction, which culminated in a suit which is now pending on appeal in this court. There is no showing on the part of appellants that said payments were not applied to said other indebtedness. No credits were indorsed upon the notes secured by said chattel mortgages, and said notes remained in the hands of respondent and no receipts were produced by appellants showing moneys paid on account of said notes. The only testimony which approaches said subject is the following:

"Mr. Crabbe [appellants' attorney]: Q. Now upon what obligation, if any, of Mr. Bettencourt's did you apply that money? Mr. McCurdy [respondent's attorney]: We object to that unless it be shown that it related to these chattel mortgages, that is the only thing before the Court. The Court: I want to know whether he applied any of it to the chattel mortgage. I told you I would allow you to go into that. Mr. Crabbe: Q. Was any of that applied to the particular chattel mortgage in question here? A. No."

After showing the receipt by respondent's predecessor of the proceeds of a check in the sum of $1400, the examination conducted by the attorney for appellants continued: "Q. And when did you receive those proceeds? Mr. Mc-Curdy: We object to that unless it be shown that it relates in some way to this chattel mortgage, otherwise this is an accounting suit. The Court: I will permit the answer." Counsel for appellants did not at any time ask the direct question, as to whether or not appellants were indebted to respondent's predecessor on account of any other transaction, or whether said payments were applied to the payment of any other indebtedness. He did not return to this specific subject, whether through inadvertence or intentionally so, we are not permitted to speculate. The existence of another obligation is referred to in the record.

■ The burden of showing payment of the notes was upon appellants. The possession of the notes by the payee bearing no indorsement of payment raises a presumption of nonpayment of any portion of said notes. Possession by the payee is *prima facie* evidence of nonpayment. The burden was upon appellants to introduce evidence which warrants the conclusion of not only the mere delivery of money to the creditor, but the conclusion of the delivery of the money on account of the particular obligation in suit. If two or more obligations are shown and one of such obligations is a note held by the payee bearing no indorsement of payment, and there is nothing but the mere payment of money which could have been applied upon either obligation, there would be nothing to overcome the presumption of nonpayment of the note. Where there is no evidence as to the existence of another obligation the person upon whom the burden of proof of payment rests must show that the money paid was on account of the particular debt, rather than upon some other debt or transaction not involved in the action. ■ If evidence be produced tending to warrant an inference of payment, an issue of fact is presented to be decided by the court or jury. (*Light* v. *Stevens,* 159 Cal. 288 [113 Pac. 659].) The court in the instant case, in the absence of sufficient rebuttal evidence to overthrow the presumption of nonpayment of said notes, held that said payments made in the manner described in the evidence

could not be applied to the chattel mortgage notes in this action. The question being one of disputed fact, this court cannot disturb the finding.

Judgment affirmed.

Richards, J., Shenk, J., Curtis, J., and Waste, C. J., concurred.