[Civ. No. 13868. First Dist., Div. Two. Apr. 25, 1949.]

VAN FLEET-DURKEE, INCORPORATED (a Corporation), Appellant, v. A. J. OYSTER, Respondent.

Chickering & Gregory and Frederick M. Fisk for Appellant.

Alden Ames for Respondent.

NOURSE, P. J.—Plaintiff sued on five promissory notes, four of which were executed in the name of "Poverty Hill Mine, by A. J. Oyster," one signed by "A. J. Oyster." All notes were made payable to plaintiff without restrictions. The trial was had without a jury and judgment went for defendant.

In 1938, a limited partnership called Poverty Hill Mine was formed by plaintiff, defendant and one C. C. Trowbridge, Jr. The defendant was the only general partner. In 1941, a partnership named Poverty Hill Properties was formed. The defendant became a general partner, plaintiff became a limited partner taking 27.18 per cent interest as such. Prior to the formation of the new partnership, plaintiff loaned the general partner $32,500 on five promissory notes. Six thousand one hundred and twenty five dollars was paid and this suit was brought to recover the balance.

While plaintiff was making his opening statement at the inception of the trial defendant presented a general demurrer addressed to the ground that the complaint was insufficient because it failed to allege that an accounting had first been had. The demurrer was taken under advisement and was sustained when the findings of fact and conclusions of law were signed.

Passing appellant's criticism as to the time of presenting and the method of ruling on the demurrer, it is sufficient to say that the order sustaining it was error. Section 2489 of the Civil Code provides: "(1) A limited partner also may loan money to and transact other business with the partnership, and, unless he is also a general partner, receive on account of resulting claims against the partnership, with general creditors, a pro rata share of the assets. No limited partner shall in respect to any such claim,

"(a) Receive or hold as collateral security any partnership property, or

"(b) Receive from a general partner of the partnership any payment, conveyance, or release from liability, if at the time the assets of the partnership are not sufficient to discharge partnership liabilities to persons not claiming as general or limited partners. . . ."

Now if the partnership assets "were not sufficient to discharge partnership liabilities" that fact did not appear on the face of the complaint and could not have been raised by

demurrer. The error in the ruling is illustrated by the undisputed fact that when the new partnership was formed in 1941 the articles provided that "the said A. J. Oyster, one of the partners herein named, and the general partner of said Poverty Hill Mine, hereby guarantees the payment of said debts, liabilities and obligations of said Poverty Hill Mine."

Appropriate allegations of the written guaranty appear in the complaint. But respondent says that this guaranty does not mean what it says. That, of course, would be a matter of proof. The complaint stated a good cause of action against the general demurrer.

The more substantial error lies in the admission of parol evidence to vary the terms of the notes and in the finding based on this evidence that the notes were paid. Due execution, delivery, and a valuable consideration were all admitted. Possession of the payee with no evidence of payment raises a presumption of nonpayment. (*Levey* v. *Henderson*, 177 Cal. 21, 23 [169 P. 673]; *Bank of Italy etc. Assn.* v. *Bettencourt*, 214 Cal. 571-577 [7 P.2d 174].)

Charging respondent with the burden of proving payment, let us examine the evidence upon which he relies. None was offered that the notes were actually paid in cash and it is conceded that this was not done. Evidence was received to prove two separate lines of defense—first, that there was never any intention to pay the notes, but appellant was to look to the profits of the mining venture only for payment; second, that it was "understood" that the notes were to be cancelled as a part of appellant's interest in the new partnership.

All the evidence taken under the first theory was clearly inadmissible under the parol evidence rule. (Code Civ. Proc., § 1856; *McArthur* v. *Johnson*, 216 Cal. 580, 582 [15 P.2d 151], where other cases are cited.) The evidence directed to the second theory, such as was admissible, does not prove payment. Respondent states that evidence of payment appears in the articles of copartnership of the second partnership and in the schedule attached. There is no mention of these notes in either the articles or the schedule. The schedule is nothing but a list of assets with no reference to any outstanding debts. The only mention of debts in the articles is that portion where respondent guarantees the payment of all debts and obligations of the old partnership.

He also refers to the books of account, Exhibit "1." This

exhibit is not in the record but we may assume that if it showed payment the respondent would have brought it up. After respondent made the first payment on the note and appellant notified him that a part had been allotted to interest, the parties orally agreed that the full amount should be credited to principal and that thereafter interest should be allowed to accumulate.

As further evidence of payment respondent refers to the fact that in April, 1941, before the organization of the new partnership, appellant sent respondent its check for $7,000 to aid respondent in liquidating some of the debts of the old partnership. We cannot follow the argument. This was a contribution expressly based on appellant's proportionate share in the partnership made to pay an existing debt of $20,000. No note was given as was done in all the other cases.

These circumstances standing alone would be wholly insufficient to support the finding of payment of the notes. They tend to show only that the notes were not intended to be obligations of the payor, but were intended to be paid only out of future profits of the partnership. The respondent cannot seriously claim that the notes were paid as that term is commonly and universally used. The purport of his entire claim and defense is that he was under no legal obligation to pay and therefore was excused from payment. This is the core of his defense and if that theory falls his whole case falls. To prove this defense he offered evidence tending to show that the notes were payable only from future profits of the partnership and that, since the operations of the mine were unprofitable there was no obligation to pay.

As we have said this evidence was inadmissible and the authorities uniformly support this conclusion. In *McArthur v. Johnson,* 216 Cal. 580, 582 [15 P.2d 151], the Supreme Court said:

"The note was an unconditional promise to pay money on demand. The parol evidence received was in direct contradiction of the express terms of said note. It tended to establish that said note was not payable on demand, but, on the contrary, was payable only out of a particular fund. Said evidence was not admissible. (Secs. 1856, Code Civ. Proc., and 1625, Civ. Code.) Said sections lay down rules of substantive law (*Harding* v. *Robinson,* 175 Cal. 534, 540 [166 P. 808]). Under conditions similar to those existing here, the principles of law involved have been applied to prevent the reception of parol evidence to contradict the terms of written

instruments in a great variety of cases. In support of our holding we shall cite only a few decisions dealing with commercial paper: *Brown* v. *Spofford*, 95 U.S. 474 [24 L.Ed. 508]; *San Jose Sav. Bank* v. *Stone*, 59 Cal. 183; *Cashman* v. *Harrison*, 90 Cal. 297 [27 P. 283]; *Leonard* v. *Miner*, 120 Cal. 403 [52 P. 655]; *Wright* v. *Shoenhair*, 100 Cal.App. 163 [280 P. 174]. Our case falls squarely within the rules announced and applied in said cases.''

Further explanation of the purpose and effect of the rule is found in *Estate of Gaines*, 15 Cal.2d 255, 264 [100 P.2d 1055], where the court said:

''The parol evidence rule, as is now universally recognized, is not a rule of evidence but is one of substantive law. It does not exclude evidence for any of the reasons ordinarily requiring exclusion, based on the probative value of such evidence or the policy of its admission. The rule as applied to contracts is simply that as a matter of substantive law, a certain act, the act of embodying the complete terms of an agreement in a writing (the 'integration'), *becomes the contract of the parties*. The point then is, not how the agreement is to be proved, because as a matter of law the writing is the agreement. Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself. The rule comes into operation when there is a single and final memorial of the understanding of the parties. When that takes place, prior and contemporaneous negotiations, oral or written, are excluded; or, as it is sometimes said, the written memorial supersedes these prior or contemporaneous negotiations. (See Civ. Code, sec. 1625; Code Civ. Proc., sec. 1856; *Harding* v. *Robinson*, 175 Cal. 534 [166 P. 808]; *Rottman* v. *Hevener*, 54 Cal.App. 474 [202 P. 329]; *Estes* v. *Delpech*, 73 Cal.App. 643 [238 P. 1085]; *Hanrahan-Wilcox Corp.* v. *Jenison Machinery Co.*, 23 Cal.App.2d 642 [73 P.2d 124]; 5 Wigmore, Evidence, sec. 2400, p. 236'; 3 Williston, Contracts, sec. 631; Restatement, Contracts, secs. 237-244.) ''

We see no purpose in continuing the discussion. The numerous errors were all substantial and it is not possible to say that any of them did not control the conclusions of law upon which the judgment is founded.

Judgment reversed.

Goodell, J., and Dooling, J., concurred.