[Civ. No. 15170. First Dist., Div. One. Aug. 18, 1952.]

VAN FLEET-DURKEE, INCORPORATED (a Corporation), Respondent, v. A. J. OYSTER, Appellant.

Alden Ames for Appellant.

Frederick M. Fisk, W. Burleigh Pattee, H. P. Livermore and Chickering & Gregory for Respondent.

PETERS, P. J.—Plaintiff, Van Fleet-Durkee, Incorporated, as payee of certain promissory notes, brought this action against A. J. Oyster, as the maker or guarantor of such notes, and recovered a judgment totaling $42,103.10, plus costs of suit. From that judgment defendant appeals.

The litigation between these parties is of long standing. The original complaint was filed in October of 1943. After issue was joined the cause proceeded to trial. The trial court entered findings and conclusions on the merits in favor of defendant, and, in addition, sustained a demurrer to the complaint. Judgment was entered in favor of defendant, and plaintiff appealed. The judgment was reversed by Division Two of this court on the grounds that the complaint did state a good cause of action, and because the finding that the notes had been paid was based on erroneously admitted evidence. (*Van Fleet-Durkee, Inc.* v. *Oyster*, 91 Cal. App.2d 411 [205 P.2d 32].) A second trial was then had, resulting in a judgment in favor of plaintiff from which the present appeal has been taken.

The controversy grows out of the operation of a gold mine. Oyster started to operate this mine in 1934. As early as 1935 W. C. Van Fleet, president of respondent corporation, on behalf of his company, contributed various sums of money

to the operation of this mine. Under date of December 30, 1938, a limited partnership known as Poverty Hill Mine was formed. In this partnership Oyster was the sole general partner with a 69 per cent interest, respondent was a limited partner with a 20 per cent interest, and C. C. Trowbridge, Jr., brother-in-law of Oyster, had an 11 per cent interest. In August of 1939 respondent contributed another $10,000 to this partnership, increasing its interest to 35 per cent. At this time respondent's total investment in the partnership, including contributions made prior to its formation, totaled $52,000.

Van Fleet testified that, during 1939 and 1940, in addition to these capital contributions, his corporation made various loans to the partnership and to Oyster, evidenced by five promissory notes totaling $32,500. The present action is predicated on these notes.

All five notes are payable to the order of respondent, carry provisions for attorney's fees in case of suit, and bear 5 per cent interest. The first one is dated December 11, 1939, is for $8,000, is payable one year after date, and is signed "Poverty Hill Mine By: A. J. Oyster." The second is dated February 19, 1940, is for $10,500, is payable one year after date, and is signed like the first one. The third note is dated May 27, 1940, is for $5,000, is payable 90 days from date, and is signed "A. J. Oyster." The fourth is also a 90-day note, is for $5,500, is dated July 8, 1940, and is signed "Poverty Hill Mine A. J. Oyster, General Partner." The fifth is a demand note for $3,500, is dated July 29, 1940, and is signed like the first two. Van Fleet testified that two payments had been made on these notes, one in September of 1940 of $2,625, and one in December of 1940 of $3,500, and that both payments, at the request of Oyster, were credited as principal payments on the first note. Thus, the total indebtedness, exclusive of interest, was reduced to $26,375.

The evidence shows that the money thus advanced by respondent went into the operation of the mine. Nevertheless, the mine continued to operate at a loss, and by 1941 there were unpaid bills totaling over $20,000, exclusive of these notes, outstanding. The partnership wanted to interest new capital and to buy a dredge, but found this impossible with its trade accounts unpaid. Van Fleet suggested that $20,000 to pay these bills be raised by each partner advancing his proportional share. Various meetings of the partners were held in March and April of 1941 at which the

trade accounts payable were discussed, and at which no mention was made of the promissory notes. The parties finally agreed to the plan proposed by Van Fleet. Sometime prior to this time the Troy Placer Mines had purchased a 15 per cent interest in the partnership from Oyster. Respondent, who had a 35 per cent interest, promptly paid in its $7,000 contribution. Troy Placer Mines and Oyster were unable to make their proportional contributions. Respondent thereupon paid in an additional $9,000, and took an assignment of a 6 per cent interest from Oyster and a 3 per cent interest from Troy Placer Mines. Thus respondent's interest in the partnership was increased to 44 per cent. Apparently Oyster made up the balance of $4,000. With the $20,000 thus received, Oyster paid off all but five or six hundred dollars of the outstanding accounts, Oyster representing that the accounts in excess of $20,000 could and would be taken care of from current receipts.

At about this same time the members of the partnership, in an attempt to secure new operating capital, decided to sell the assets of the first partnership to a second partnership to be formed, the members of the first partnership to retain their proportional interests as compared with each other. A schedule of what purports to be the "assets" of the first partnership was prepared by the accountant of that company. This schedule purports to show the assets as valued at $219,534. Van Fleet testified that the values assigned in that list were entirely arbitrary and fictitious, and did not represent the true value of the assets of the first partnership. Included within the list of "assets" is $108,799.89 for "Cost heretofore paid for exploration and development," which certainly does not necessarily represent the present value of an asset. Van Fleet testified that he attempted to have the correctness of this schedule checked by his accountant but was informed that the figures could not be verified from the partnership books.

The second partnership was formed May 13, 1941, and was called Poverty Hill Properties. Additional capital was secured from new partners. The partners in the first partnership assigned their respective interests in that partnership to the second.

Included within the second partnership agreement was a guarantee on the part of Oyster to pay all unpaid obligations of the first partnership. This guarantee reads in part as follows: "Said partnership hereby created [the second

partnership] shall not be responsible for any debts, liabilities or obligations of said partnership, Poverty Hill Mine [the first partnership] and all debts, liabilities and obligations of said Poverty Hill Mine [with certain exceptions not here pertinent] . . . shall have been paid and discharged before this agreement is executed; and the said A. J. Oyster, one of the partners herein named, and the general partner of said Poverty Hill Mine, hereby guarantees the payment of said debts, liabilities and obligations of said Poverty Hill Mine.''

Attached to a certificate dated March 3, 1942, canceling the certificate of limited partnership of the second partnership, there is a copy of the certificate of limited partnership of the Poverty Hill Properties. Included therein is an enumeration of what purports to be the amount contributed by each partner to the second partnership. Respondent is there listed as having contributed $94,399.62 which is precisely 43 per cent of $219,534, the value fixed in the schedule as the total assets of the first partnership. It will be remembered that respondent's limited interest in the first partnership was 44 per cent. Respondent had taken a 1 per cent interest as general partner in the second partnership.

In September, 1943, the notes not having been paid, the respondent made written demand for their payment, and, upon this demand being ignored, commenced this action.

The appellant testified that, during the life of the first partnership, when respondent advanced the sums represented by the promissory notes here involved, the other partners made contributions proportional to their interests. If this were the fact then it would appear that such advances were contributions to capital and not loans. But the trial court did not believe such testimony. Van Fleet denied that such was the fact. Moreover, appellant's testimony could not be verified by an examination of the books of the company, where such fact, if it were a fact, would normally appear. It is also true that no other partner received promissory notes as evidence of such advances. It will be remembered that respondent not only has the notes, but that two payments were made on one of the notes. Under these circumstances, the finding that respondent made these advances as loans is amply supported.

It is the basic contention of appellant that the notes in question were in fact paid when the second partnership was organized. He points out that the total assets of the first

partnership as shown by the schedule totaled $219,534, and that respondent was assigned an interest in the second partnership of $94,399.62, which is 43 per cent of the total. The figure $94,399.62 adds up to approximately the sum of the capital contributions of respondent to the first partnership plus the amount unpaid on the notes which are the subject of this action. Thus, says appellant, by mathematical calculation, he has demonstrated that the notes have in fact been paid.

These figures and calculations would make out a good case of payment if the figure $219,534 actually represented the value of the assets of the first partnership, and if the value assigned to each partner's contributions to that partnership represented the actual amount contributed by him. Van Fleet testified that these figures were fictitious and arbitrary. This testimony was supported by evidence of the fact that the second partnership listed Trowbridge's contribution to the first partnership as $17,562.72, when in fact he had contributed less than $10,000. The same wide discrepancy appears as to the actual contribution of Troy Placer Mines, and the value assigned to it. Thus, although it happens that the value assigned to respondent's interest—$94,399.62—approximately amounts to the sum of its capital contributions and the amount unpaid on the notes, the trial court believed that such figure was arbitrarily selected and did not represent a proportional share of actual assets. That was a fact question, and, on conflicting evidence and inferences, it has been determined adversely to appellant by the trial court.

It must be remembered that the burden of showing payment was on appellant. ▉ The notes were in the possession of the payee, and bear no endorsement of payment. These facts raise a presumption (or at least support an inference) of nonpayment. This was so held on the prior appeal in this case. (*Van Fleet-Durkee, Inc.*, v. *Oyster*, 91 Cal.App.2d 411 at p. 413 [205 P.2d 32] ; see, also, *Bank of Italy etc. Assn.* v. *Bettencourt*, 214 Cal. 571 [7 P.2d 174], and *Levey* v. *Henderson*, 177 Cal. 21 [169 P. 673], there cited.) ▉ Where a presumption or inference of nonpayment arises, and nonconclusive evidence of payment is introduced (but evidence that might support an inference of payment), the question of payment or nonpayment becomes one of fact. ▉ Inasmuch as the evidence on the issue supports conflicting inferences, the finding of nonpayment cannot be disturbed.

■ The appellant also attempts to attack the finding that the notes had not been discharged by the contention that when the second partnership agreement was entered into and the assets of the first partnership transferred to the second, a novation took place as a matter of law, and the notes were thus discharged. This contention cannot stand the test of analysis. By definition, a novation "is the substitution of a new obligation for an existing one." (Civ. Code, § 1530.) The existing obligation was the liability of the first partnership and of Oyster on the notes. The second partnership did not assume that liability. Under the second partnership agreement the only person liable on the guarantee was Oyster. Unless the obligation on the notes was discharged by the interest granted respondent in the second partnership, and we have already held that the finding to the contrary is supported, there could not possibly be a novation of the type claimed by appellant.

■ It is true that under subdivision 2 of section 15036 of the Corporations Code (formerly Civ. Code, § 2430), a section relating to partnerships, it is recognized that a debtor of a partnership may be discharged by a novation, and such novation "may be inferred from the course of dealing" between the parties. The subsection reads as follows: "A partner is discharged from any existing liability upon dissolution of the partnership by an agreement to that effect between himself, the partnership creditor and the person or partnership continuing the business; and such agreement may be inferred from the course of dealing between the creditor having knowledge of the dissolution and the person or partnership continuing the business." This section, obviously, cannot be applied as a matter of law to the instant case where the "course of dealing" is not conclusive, supports reasonable inferences both ways, and the court has found against appellant.

Appellant contends that during the discussions preceding the creation of the second partnership Van Fleet did not mention the notes, and contends that he was under a duty to speak, that his failure to do so amounted to a breach of faith, and that respondent's consent to a novation must be inferred from such silence. ■ Appellant quite properly contends that where there is a duty to speak, adverse inferences will arise by failure to speak. He cites, in particular, *Barnes* v. *Moore*, 80 Cal.App.2d 39 [180 P.2d 740], which involved the purchase by one partner of the other's entire

interest. After the purchase was completed the purchasing partner attempted to recover from the selling partner a claimed shortage in the selling partner's original contribution. During the negotiations for the purchase of this interest the purchaser knew of this deficiency, but the agreement of sale and purchase was silent on this issue. A judgment in favor of the purchasing partner was reversed. The court properly applied the rule that when one partner purchases the interest of another the transaction presumptively includes a final settlement of all partnership indebtedness, and amounts, in legal effect, to an accounting between the partners. The burden rests on the purchaser to rebut that presumption. That he did not do. The rule of that case is not here applicable. In the Barnes case there was the purchase of the entire interest of one partner by the other. The obligation involved was not represented by notes. The only reasonable inference was that this debt was paid as part of the purchase price. That is not so here. ▪ Here there were promissory notes evidencing the indebtedness. Appellant knew that these notes existed. Here there was a guarantee by Oyster to pay the obligations of the first partnership, which included the notes. If a duty to speak arose, under the circumstances, that was a two-way duty— on Oyster as well as on respondent. As already pointed out, unlike the Barnes case, conflicting inferences here exist, and the findings adverse to appellant are supported and cannot be disturbed.

Moreover, the evidence is not clear that respondent did keep entirely silent about the notes. At this trial Van Fleet testified that ''prior'' to the formation of the second partnership he made a ''demand'' upon Oyster that the notes be paid. On cross-examination he admitted that on the prior trial he had testified that this conversation, while taking place in May, 1941 (the second partnership agreement was signed May 13, 1941), was after the date the second partnership agreement was signed. This conflict was for the trial court.

Appellant not only incorrectly contends that the financial setup of the second partnership constituted in legal effect an accounting between the partners, a point already decided adversely to him, but also makes the contention that, if an accounting has not already occurred, this being a suit between partners, no action will lie until an accounting has been had. ▪ Undoubtedly the general rule is that an

accounting is a condition precedent to a suit by one partner against another. (*Dukes* v. *Kellogg,* 127 Cal. 563 [60 P. 44] ; *Mosher* v. *Helfend,* 7 Cal.App.2d 48 [44 P.2d 1050] ; *Malott* v. *Seymour,* 101 Cal.App.2d 245 [225 P.2d 310].) But that rule is not without exceptions. There is a particularly thorough annotation on this subject in 168 A.L.R. 1088. (For earlier cases, see, 58 A.L.R. 621 ; 21 A.L.R. 21.) Starting at page 1098 some seven exceptions to the general rule are listed. ■ Many cases, including cases from California, are there collected supporting the rule that where no complex account involving a variety of partnership transactions is involved, an accounting is not a prerequisite to suit. Thus, where the item involved is segregated by agreement from other partnership transactions, an accounting is not indispensable. ■ The giving of a promissory note constitutes the acknowledgement of a separate debt within this exception.

An illustrative California case on this subject is *Blee* v. *Lead Mountain Mines,* 8 Cal.2d 550 [66 P.2d 646]. In that case one partner advanced money to cover the partnership's liability in a lawsuit. He took back, as evidence of the advance and for security, a partnership note and chattel mortgage. He brought suit to foreclose the chattel mortgage and to secure a deficiency judgment against the other partners. The Supreme Court summarily dismissed the point now under discussion with the following language (p. 552) : "Appellants also contend that the only action available to the plaintiff was one for an accounting and dissolution of the partnership ; but the evidence shows and the court found that this advance of money was a transaction sufficiently segregated to permit a separate action on the obligation." (See, also, *Johnson* v. *Rosenstein,* 132 Cal.App. 675 [23 P.2d 418] ; *Collins* v. *Meis,* 139 Cal.App. 233 [33 P.2d 472] ; *Emerzian* v. *Emerzian,* 6 Cal.App.2d 721 [44 P.2d 656].)

The rule of these cases is here applicable. The evidence here is capable of the interpretation that the notes sued upon, and the execution of the guarantee by Oyster, made these transactions separate and distinct from other partnership transactions.

It should also be pointed out that this point was at least partially passed upon on the prior appeal of this case. In that case, in addition to making findings and rendering judgment on the merits in favor of Oyster, the trial court, at the conclusion of the trial, sustained a general demurrer on the ground that the complaint failed to allege an accounting.

This was reversed, the court pointing out that the complaint alleged that the suit was on the guarantee, and necessarily implied that in such cases an accounting is not necessary.

 Appellant next refers to section 15513 of the Corporations Code (formery Civ. Code, § 2489), a provision of the Uniform Limited Partnership Act, which, while permitting a limited partner to lend money to the partnership, prohibits him from receiving "from a general partner of the partnership any payment, conveyance, or release from liability, if at the time the assets of the partnership are not sufficient to discharge partnership liabilities to persons not claiming as general or limited partners." This section was pleaded as a special defense by appellant.

The appellant refers to testimony that when the second partnership was formed, the $20,000 contributed by the partners was insufficient to pay all the debts of the first partnership because the then indebtedness exceeded $20,000 by some five or six hundred dollars. Whether this excess was or was not subsequently paid does not clearly appear. The trial court found that "all of the debts and obligations of said partnership known as Poverty Hill Mines, including all of its debts and obligations to persons not claiming as general partners or limited partners, have been paid in full, with the exception of the indebtedness evidenced by the promissory notes" here involved.

If it be assumed that Oyster, as guarantor of the notes, can raise this affirmative defense (no creditor is complaining), the burden was on him to establish it. That he did not do. While the evidence shows that the debts of the first partnership exceeded $20,000 by some five or six hundred dollars, there is no evidence that these excess debts have not been paid. There is evidence that Oyster represented to the partners, during the discussions preceding the creation of the second partnership, that this excess would and could be paid out of income. Moreover, Van Fleet testified that, after the second partnership was formed, these excess accounts were picked up by his company, sent to Oyster, and if he did not pay them, his company did. Under such circumstances, the finding of payment is supported, and the quoted statute has no application.

The other points raised by appellant are so lacking in substance that they need not be separately discussed.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.