[Civ. No. 24022. Second Dist., Div. One. Dec. 29, 1959.]

M. LAURENCE MONTGOMERY, Respondent, v. STEPHAN RIESS et al., Appellants.

H. F. Rosenmund and W. Floyd Cobb for Appellants.

Henry J. Rogers, Lawler, Felix & Hall and John M. Hall for Respondent.

FOURT, J.—This is an appeal from a judgment in favor of the plaintiff in an action involving a non-negotiable promissory note.

The complaint filed on May 17, 1956, sought recovery on a promissory note. A copy of said note is set forth in a footnote hereto.[1] The due execution and delivery of the note to and ownership in the plaintiff was alleged. It was also alleged that no part of the same had been paid and that no agreement of

[1] "$11,000.00 July 30, 1954

"Six months after date, we promise to pay to the order of M. Laurence Montgomery, the sum of ELEVEN THOUSAND and No/100 DOLLARS, for value received, with interest from date at the rate of one per cent per annum until paid. Principal and interest payable in lawful money of the United States at San Francisco, California.

"The payee of this note agrees that the full amount thereof may be credited by the payors as payment on account, if the purchase price of Simi lands and water rights of the payors, as expressed in any agreement of purchase thereof is executed between the payee and the payors within six months of the date herewith.

STEPHAN RIESS
s/ Stephan Riess
THELMA RIESS
s/ Thelma Riess."

purchase of the lands and water rights referred to in the note had been executed and that the entire amount was due and owing.

The defendants answered and admitted the execution of the note but denied the delivery thereof. The answer also set forth that at the time of the making of the promissory note the relationship of joint venturers existed between the plaintiff and defendants and that the plaintiff was obligated to pay the defendants certain sums each month. It was further alleged in the answer that the defendants owned land which contained a large supply of water, that the plaintiff was desirous of acquiring certain lands from third parties lying in the vicinity of the defendants' land and plaintiff was interested in securing from the defendants the rights to obtain water from their land to the end that the said water could be utilized on the land to be acquired by the plaintiff. There were other defenses which will be mentioned hereafter. The cause was tried before the judge without a jury and judgment was granted the plaintiff as requested.

A résumé of the facts is as follows:

Before the occasion of making the promissory note, the plaintiff was the owner of certain lands and likewise the defendants were the owners of land in Ventura County. On June 27, 1953, the parties entered into an agreement in writing titled "Agreement of Joint Venture" which provided, among other things, that the plaintiff would drill at least one water well at a place to be selected by Riess; that plaintiff would construct a reservoir and pipe lines upon the land of defendants and construct lines to the land of plaintiff within a specified period of time; that plaintiff was to pay the sum of $1,000 per month, commencing July 1, 1953, to a corporation which defendants were to organize until a certain amount of water was used. The plaintiff drilled a water well under the provisions of the joint venture agreement and paid to defendants from July 1, 1953, to July 1, 1954, the sum of $13,000 at the rate of $1,000 per month. The defendants, after the passage of some time, wanted the $1,000 monthly paid to them instead of to the water corporation which they had organized and by an executed oral agreement, the payments were made to Riess instead of to the water company.

The defendants claimed in a letter dated June 19, 1954, that the plaintiff was in default under the agreement and a meeting was had at the home of the defendants on June 24, 1954, where the plaintiff, Riess, the attorney for defendants

and a financial adviser to the plaintiff were present. The plaintiff apparently asked for a 90-day extension of time within which to perform certain obligations under the joint venture agreement. Riess stated in effect at that time that he needed $10,000 with reference to a "speculation in the desert somewhere . . . in the Coachella Valley." The figure was subsequently raised to $11,000. The plaintiff had nothing whatsoever to do with the desert venture of the defendants and apparently knew nothing about it. The plaintiff indicated that he would be able to advance such a sum to Riess. At the meeting Riess also proposed that the agreement of joint venture should be modified or superseded by an agreement which would provide in effect that the defendants would sell certain of their property to plaintiff for $1,000,000. The plaintiff was surprised with the proposal, however he listened to what Riess had to say in such connection but he, the plaintiff, said but little and admittedly did not agree to purchase the defendants' property for $1,000,000 or any other sum. Riess also stated at the meeting that he had considered having his land surveyed and the cost of such survey would be about $3,300.

After the meeting the defendants' attorney prepared a draft of an agreement and sent the same to the attorney for the plaintiff on June 28, 1954. On the next day the defendants' attorney sent certain proposed amendments to the agreement theretofore sent to the plaintiff's attorney and also sent a form of a receipt signed by the defendants for $11,000.[2]

---

[2] "This receipt [Ex. G] read as follows:

" 'RECEIPT FOR ADVANCE OF MONIES

"The undersigned, STEPHAN RIESS and THELMA RIESS, hereby acknowledge receipt of, and promise to repay in the manner following, the sum of Eleven Thousand ($11,000.00) Dollars to M. Laurence Montgomery: This sum is being advanced by Montgomery and received by the undersigned as an advance on monies to be payable by Montgomery to the undersigned under the terms of that certain agreement of joint venture dated June 27, 1953 and recorded as Document No. 15516 on July 2, 1953 in the Official Records of Ventura County, California, together with modification of the said agreement, presently orally agreed upon in substance and presently being reduced to writing, said modification agreement providing in general for payment of the sum of One Million Dollars in installments of $50,000 in 18 months; $1,500 or more per month for two years; $2,000 or more per month for three years and $5,000 or more thereafter. The sum of Eleven Thousand Dollars being advanced at this time shall be considered as an advance by Montgomery of such sum on the obligation to pay the full sum referred to herein and shall be credited by the undersigned in reduction of such obligation.
Susana Knolls, June 28, 1954.

STEPHAN RIESS
THELMA RIESS.' ''

The receipt form was not satisfactory to the plaintiff and was not accepted by him. The attorney for the plaintiff was told by plaintiff to refuse to accept it. The plaintiff's financial adviser then sent to Riess a form of straight promissory note in the sum of $11,000 for the defendants to execute. According to the defendants' attorney, this made the defendant Riess "furious" and defendants' attorney told the plaintiff's attorney that the defendants had no intention of borrowing the money. The plaintiff's attorney then told the defendants' attorney that he, plaintiff's attorney, had not been at the meeting on the 24th and that counsel should take the matter up with the financial adviser of the plaintiff. Thereafter, the negotiations had with respect to the $11,000 were with the financial adviser, and in the language of defendants' attorney there resulted a "compromise." Eventually the compromise was completed and the note heretofore set forth in footnote 1 was executed by the defendants and delivered to the financial adviser of the plaintiff and the $11,000 was paid to Riess. The payment of the amount set forth in the note was in addition to the $1,000 per month payments under the joint venture agreement. The plaintiff stated that it was his understanding that the money received under the note transactions was to be used in the defendants' project in the Coachella Valley with which plaintiff had no concern or interest.

The proposed sale of the defendants' property to the plaintiff was never agreed upon or consummated. There was never a meeting of minds orally or in writing.

On October 7, 1954, the plaintiff filed suit in Ventura County against the defendants and the water company organized by the defendants to enforce a rescission of the joint venture agreement and for its cancellation. The plaintiff set forth in that complaint in rescission that the joint venture agreement had been rescinded about September 28, 1954, because of false statements made by Riess, mistake and failure of consideration. At the time of the filing of that suit the plaintiff did not know that the defendants intended that the $11,000 was an advance to be applied in liquidation of payments under the joint venture agreement.

The defendants in the rescission action filed an answer and a cross-complaint. In the cross-complaint some mention was made of the $11,000 transaction. A demurrer to the cross-complaint was sustained and a first amended cross-complaint was filed in which there was no mention of the $11,000 transaction.

Thereafter and while the rescission action was pending C. W. Murchison became interested in and bought the lands of the plaintiff and the defendants. Prior to that sale the plaintiff dismissed his rescission complaint with prejudice and the cross-complainants (Riesses) dismissed their cross-complaint with prejudice. It is true, as heretofore indicated that the promissory note was not put in issue by the first amended cross-complaint, it was not mentioned in the complaint of the plaintiff and we fail to see how the court in that action, had it been tried, could have adjudicated the rights of the parties with reference to the note obligation. An agreement headed "Termination of Agreement of Joint Venture" was dated August 31, 1955, and signed by the defendants and the plaintiff and it made no mention of the promissory note and only purported to wind up and settle the affairs of the joint venture and not the note transaction. In other words the two matters were separate and distinct from each other.

Appellants contend that the court erred in failing to find that the transaction sued upon was not in performance of the joint venture agreement, and that the trial court erred in failing to find that the plaintiff was estopped and barred from enforcing the obligation represented by the promissory note, asserting in effect that by the rescission action the entire obligations of each to the other were settled and each released the other from any claims whatsoever.

It is true perhaps that at the time of the execution of the note the plaintiff and the defendants were joint venturers but that does not necessarily imply that the note transaction was a part of that venture. We are of the opinion that the evidence shows clearly that the note transaction was not a part of the joint venture. In *Bull* v. *Coe,* 77 Cal. 54 [18 P. 808, 11 Am.St.Rep. 235], Bull, Strong and Earl were partners in the operation of a mine. Bull loaned some money to Strong, taking a mortgage on Strong's land as security. Strong contributed the money received from the loan to the enterprise as his share of the venture. The mine failed. Strong died. Bull sued Strong's administrator, Coe, to foreclose the mortgage. A trial court judgment for Coe was reversed. The Supreme Court said among other things at page 59:

"It is well settled in this state, as elsewhere, that one partner cannot sue another upon a demand arising out of the partnership transactions, in the absence of a settlement of the accounts. But by the terms of this rule it does not apply

where the transaction is not a partnership matter. *And it seems plain that a loan from one partner to another is not a partnership transaction, notwithstanding the fact that the borrower intends to put the money into the firm, and does so. Accordingly, it is well settled that the lender in such a case can maintain an action for the recovery of the money, although there has been no settlement of the partnership accounts."* (Emphasis added.)

Substantially the same rule has been stated in *Johnson* v. *Rosenstein,* 132 Cal.App. 675, 676 [23 P.2d 418]; *Collins* v. *Meis,* 139 Cal.App. 233, 236 [33 P.2d 472]; *Arnheim* v. *Gordon,* 21 Cal.App. 754, 755 [132 P. 840]. See also *Reid* v. *Gillespie,* 87 Cal.App.2d 769, 771 [197 P.2d 566]; *Blee* v. *Lead Mountain Mines,* 8 Cal.2d 550 [66 P.2d 646]. Also see 68 Corpus Juris Secundum 556, § 114, where it is set forth:

"Partners can sue each other at law on claims growing out of transactions which are not connected with the partnership business, just as though they were strangers to the partnership relation, even though an action for partnership accounting is pending between the parties.

"*Loans or advances* made by one partner to another may be recovered in an action at law between the partners, although no previous accounting is had, even though the borrower intends to put the money into the firm and does so; but advancements constituting a loan from a partner to the firm or from the firm to a partner are not such independent transactions as will support an action at law prior to a settlement of partnership affairs."

The terms of the note itself show that the transaction was a loan from the plaintiff to the defendants and not an advance to be applied in liquidation of some debt which might become due under the joint venture agreement. If such be the fact, then the note should not be varied by any parol evidence. There never was an acceptance of any proposal for the sale of defendants' land to the plaintiff and consequently the note came due by its own terms 6 months after July 30, 1954. The note on its face refers to an agreement which was to be executed in the future and not to the joint venture agreement which had already been executed.

The parol evidence rule applies to promissory notes. (*Moriconi* v. *Flemming,* 125 Cal.App.2d 742, 745 [271 P.2d 182]; *Bank of America* v. *Goldstein,* 25 Cal.App.2d 37, 43 [76 P.2d 545]. See also *Oakland Medical Building Corporation* v. *Aureguy,* 41 Cal.2d 521 [261 P.2d 249]; *Van Fleet-Durkee, Inc.* v. *Oyster,* 91 Cal.App.2d 411 [205 P.2d 32]; *Security*

*First Nat. Bank* v. *Rospaw,* 107 Cal.App.2d 220 [237 P.2d 76].) ██ ██ The parol evidence rule is a rule of substantive law and even if there was a verbal agreement that the note might be paid in a different way from that provided in the note itself, such testimony of such oral agreement should be disregarded even though such evidence was admitted without objection. (*Pinsky* v. *Sloat,* 130 Cal.App.2d 579, 589 [279 P.2d 584]; *Lifton* v. *Harshman,* 80 Cal.App.2d 422, 432 [182 P.2d 222].) However, even if it be assumed that the court could under the circumstances look beyond the terms of the note itself the evidence is such that it amply supports the trial court's views and findings to the effect that there was no oral agreement whereby the $11,000 paid to the defendants could be credited on payments to become due to defendants from the plaintiff under the joint venture agreement. The evidence shows that Riess tried to get the plaintiff to accept a receipt for the $11,000—a receipt which in effect stated that the money was an advance on monies payable by the plaintiff under the joint venture agreement and the plaintiff rejected any such a receipt and insisted upon a promissory note.

Appellants also assert that the court interfered with the cross-examination of the plaintiff and in the striking of certain evidence. We have carefully read the record in this case as set forth in the reporter's transcript and considering the case in its entirety we find no prejudicial error.

As to the contention of appellants that the trial court failed to find on material matters (namely that there was no finding as to whether the note was executed as a receipt or upon the matter as to whether such advance could be credited to the plaintiff's obligation under the joint venture agreement), a reading of the findings convinces us that there is no merit to such claims. There was a specific finding that the note was not a receipt and that the advance of $11,000 could not be credited against any amounts to become due under the joint venture agreement. ██ In any event had there been no finding, any finding in the matter, under the circumstances, would necessarily be against the appellants and therefore they are in no position to complain.

Lastly, the appellants assert that the note was conditionally delivered to the plaintiff through the financial adviser. The record shows ample and substantial evidence to the contrary.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.